**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| EMMANUEL C. GONZALEZ, | |
| Plaintiff, | |
| | Case No. 2:14-cv-906-JRG-RSP |
| v. | |
| | *LEAD CASE* |
| INFOSTREAM GROUP, INC. ET AL., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the opening claim construction brief of Emmanuel C. Gonzalez ("Plaintiff"), Dkt. No. 94, filed on June 29, 2015,[1] the response of Tagged, Inc. and New Life Ventures, Inc. ("Defendants"), Dkt. No. 96, filed on July 14, 2015, and the reply of Plaintiff, Dkt. No. 98, filed on July 22, 2015. The Court held a hearing on the issues of claim construction and claim definiteness on August 18, 2015. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] In this order, citations of the parties' filings in this case are to the filing's number in the docket for the lead case ("Dkt. No.") and pin cites are to the page numbers assigned through ECF.

**Table of Contents**

I.      **BACKGROUND** ...................................................................................................... **3**

II.     **LEGAL PRINCIPLES** ......................................................................................... **5**

III.   **CONSTRUCTION OF AGREED TERMS** ...................................................... **9**

IV.   **CONSTRUCTION OF DISPUTED TERMS** .................................................. **9**

   A.   "digital label" / "label" / "labels"..................................................................... 10

   B.   "universally-agreed convention" / "agreed convention" ................................... 19

   C.   "wherein each digital label uniquely refers to and represents a particular item of qualitative information" / "wherein each digital label represents and comprises a unique reference to a specific item of qualitative information" ........................ 23

   D.   "search . . . for subscriber digital labels" / "search . . . based on the labels"................... 25

   E.   "effective use of . . . digital labels".................................................................. 30

   F.   "search engine" / "internet search engine" ....................................................... 31

   G.   "internet search engine or internet browser program or service" ..................... 35

   H.   "stored websites" .............................................................................................. 39

   I.   "Host Website's computer" ............................................................................... 41

V.     **CONCLUSION** ............................................................................................... **43**

# I.     BACKGROUND

Plaintiff alleges infringement of five related U.S. Patents: No. 7,558,807 (the "'807 Patent"), No. 7,647,339 (the "'339 Patent"), No. 7,873,665 (the "'665 Patent"), No. 8,065,333 (the "'333 Patent"), and No. 8,296,325 (the "'325 Patent") (collectively, the "Asserted Patents").[2] The Asserted Patents are directed to methods and systems for labeling websites or a website's owner (the subscriber) with information about the website, the website's owner, or the website's content.

The patents describe "digital labels" that can be used to improve the efficacy of Internet searches over word-match or category-selection Internet searches. A label-based search is an improvement over other Internet searches because a label-based search identifies qualities that are associated with a particular website or subscriber, as opposed to simply identifying the words in the content of a website or the category to which a website has been assigned. *See, e.g.*, '665 Patent col.7 ll.48–54, col.9 l.34 – col.10 l.3.[3] The abstracts of the '339 and '807 Patents provide:

---

[2] All of the Asserted Patents are related to a provisional application filed on October 4, 2000. The Asserted Patents name a single inventor, Emmanuel C. Gonzalez. The '339 Patent issued on January 12, 2010 from an application filed on February 22, 2001. The '807 Patent, issued on July 7, 2009 from an application filed on May 18, 2004. The '807 Patent claims priority to the application that issued as the '339 Patent. The '665 Patent issued on January 18, 2011 from an application filed on November 23, 2009. The '665 Patent issued from a continuation-in-part of the application that issued as the '339 Patent. The '333 Patent issued on November 22, 2011 from an application filed on December 10, 2010. The '333 Patent issued from a divisional of the application that issued as the '665 Patent. The '325 Patent issued on October 23, 2012 from an application filed on December 10, 2010. The '325 Patent issued from a divisional of the application that issued as the '665 Patent. The Asserted Patents share a substantially identical specification, other than the claim sets and matter added to the '665 Patent that is also found in the '333 Patent and the '325 Patent.

[3] The parties represent that the disclosure of the '665 Patent through column 19 line 22 is substantially identical to the disclosures of the priority patent (the '339 Patent) and the other Asserted Patents. *See* Dkt. No. 94 at 4 n.1; Dkt. No. 96 at 8 n.5. As such, the Court follows the parties' convention; i.e., cites to the '665 Patent indicate text that appears in all the patents unless otherwise noted.

There is described a host website and method for digitally labeling websites or subscribers with digital labels which represent characteristics and qualities of the website. The digital labels are stored on host websites, each of which is directed to a specific subject or activity. The host website can also provide digital labels for storage in other host websites. The host website is provided with artificial intelligence capabilities.

The abstracts of the '665, '333, and '325 Patents provide:

A host website, method and system for digitally labelling websites or subscribers with digital labels which represent characteristics or qualities of the website is disclosed. Digital labels are stored on host websites, each of which is directed to a specific subject or activity. The host website can also provide digital labels for storage in other host websites. The host website is provided with artificial intelligence capabilities. Methods and systems for asymmetric access in a host website database are disclosed.

Claim 1 of the '807 Patent and Claim 1 of the '665 Patent, representative system and method claims respectively, recite as follows:

| '807 Patent | '665 Patent |
|---|---|
| 1. A host website apparatus for listing subscribers comprising:<br><br>a computer system,<br>said computer system includes a digital label database for providing to a listing subscriber digital labels representing different specific qualities and a subscriber database for storing a listing of subscribers' digital labels;<br>said computer system being configured to respond to a subscriber's request for listing and guiding the subscriber via the Host Website display to enter information pertaining to the subscriber and converting the information to digital labels by accessing said digital label database and storing the subscriber's digital labels in said subscriber database; and<br>said computer system further configured to enable users to search said subscriber database for subscriber digital labels identifying subscriber qualities. | 1. A method for multi-parameter digital labelling of Internet Websites, comprising:<br>gathering of unambiguous, multi-parameter qualitative data concerning a single or a plurality of at least one of an Internet website, an Internet posting, their substantive contents, and their owner or creator;<br>sourcing, from the owner or creator of said website or Internet posting, each said item of qualitative data referring to said website, said internet posting, or its substantive contents or its owner or creator;<br>producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information;<br>wherein producing of digital labels further comprises encoding of the qualitative data in any digital form;<br>domiciling of these multi-parameter digital labels on at least one of the same computer, the same computer network, and on several computers linked to each other;<br>manipulation of the said multi-parameter digital labels comprising generation of a list of at least one of websites and Internet postings that match parameters stipulated by an entity conducting a search and represented in the digital labels according to at least one of the presence of, the absence of, the numerical or other value contained in, the numerical or other value not contained in, any one, all, and any configuration of the labels that have reference to one or more websites or Internet postings; and<br>making available the effective use of these multi-parameter digital labels and the means for their manipulation, to the general public through the Internet. |

## II.    LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis.

Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Technical dictionaries and treatises may help a

court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* The Supreme Court recently explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

The "determination of claim indefiniteness is a legal conclusion that is drawn from the Court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Section 112 entails a "delicate balance" between precision and uncertainty:

> On the one hand, the definiteness requirement must take into account the inherent limitations of language. Some modicum of uncertainty, the Court has recognized, is the price of ensuring the appropriate incentives for innovation. . . . At the same time, a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them. Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims. And absent a meaningful definiteness check, we

are told, patent applicants face powerful incentives to inject ambiguity into their claims. . . . Eliminating that temptation is in order, and the patent drafter is in the best position to resolve the ambiguity in patent claims.

*Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2128–29 (2014) (citations omitted).

Therefore, in order for a patent to be definite under § 112, ¶ 2,[4] "a patent's claims, viewed in light of the specification and prosecution history, [are required to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Id.* at 2129. The determination of "definiteness is measured from the viewpoint of a person skilled in the art at the time the patent was filed." *Id.* at 2128 (emphasis in original, citations omitted). "The definiteness requirement . . . mandates clarity, while recognizing that absolute precision is unattainable." *Id.* at 2129. This standard reflects rulings that have found that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id.* at 2129. When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005); *accord Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (citing *Datamize*, 417 F.3d at 1351). "Whether a claim reasonably apprises those skilled in the art of its scope is a question of law." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008). As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Nautilus*, 134 S. Ct. at 2130 n.10.

---

[4] As the Asserted Patents have an effective filing date earlier than Sept. 16, 2012, the pre-AIA version of 35 U.S.C. § 112 governs the definiteness analysis here.

## III. CONSTRUCTION OF AGREED TERMS

The parties have agreed to the following constructions set forth in their Joint Claim Construction Chart Pursuant to Patent Local Rule 4-5(d) (Dkt. No. 101):

| Term[5] | Agreed Construction |
|---|---|
| "search engine's own computer"<br><br>• '339 Patent Claim 1<br>• '333 Patent Claim 1 | Plain and ordinary meaning (subject to construction of "search engine"). |
| "providing the right of access to the search engine's or Host Website's computer"<br><br>• '333 Patent Claim 1 | Plain and ordinary meaning (subject to construction of "search engine" and "Host Website's computer"). |

Having reviewed the intrinsic and extrinsic evidence of record, the Court agrees with and hereby adopts the parties' agreed constructions.

## IV. CONSTRUCTION OF DISPUTED TERMS

Plaintiff submits that the person having ordinary skill in the art, from whose perspective the claims are interpreted, is:

> a person with an advanced college degree and some business experience. The person would further possess at least a basic knowledge of Internet search concepts, as well as at least some fundamental computer programming skills.

Dkt. No. 94 at 8 (citing Declaration of Ryan M. Garlick, Ph.D. ("Garlick Decl.") ¶ 32 (Plaintiff's Ex. F, Dkt. No. 94-7 at 8)). Defendants do not oppose Plaintiff's submission and have not submitted a competing definition of the person of ordinary skill in the art. Accordingly, the Court adopts Plaintiff's proposal.

---

[5] For all term charts in this order, the claims in which the term is found are listed with the term but: (1) only the highest level term in each dependency chain is listed, and (2) only asserted claims, as identified by Plaintiff in his opening brief (Dkt. No. 94 at 5), are listed.

### A. "digital label" / "label" / "labels"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "digital label"<br><br>• '807 Patent Claims 1, 3<br>• '665 Patent Claim 1, 55<br>• '325 Patent Claim 7 | "Symbols or designations in electronic form representing qualitative or descriptive data or characteristics" | Plain and ordinary meaning. |
| "label" / "labels"<br><br>• '665 Patent Claims 1, 55<br>• '333 Patent Claim 1<br>• '325 Patent Claim 7 | "Symbols or designations in electronic form representing qualitative or descriptive data or characteristic" | Plain and ordinary meaning. |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits that the terms "label" and "digital label," as used in the claims, have the same meaning. Dkt. No. 94 at 19–21. Plaintiff submits that the terms were defined in the Asserted Patents and prosecution history as "symbols" that "convey unambiguous qualitative data about an item, its maker, or its owner, in digital form." *Id*. at 9–10. Plaintiff argues that his proposed construction captures this definition and that Defendants' proposed construction threatens to encompass prior art such as meta-tags that Plaintiff distinguished from his invention during prosecution. *Id*. at 10–11.

In addition to the claims, Plaintiff cites the following intrinsic and extrinsic evidence in support of his position. **Intrinsic evidence**: '665 Patent col.3:13–41, col.4 ll.16–23, col.4 l.54 – col.5 l.3, col.5 l.46 – col.6 l.9, col.7 l.47 – col.8 l.25, col.11 l.63 – col.12 l.26, col.12 ll.35–55, col.15 ll.6–9; '339 Patent File Wrapper December 29, 2003 Amendment (excerpt) (Plaintiff's Ex. J, Dkt. No. 94-11), November 9, 2007 Fax (excerpt) (Plaintiff's Ex. M, Dkt. No. 94-14); '807 Patent File Wrapper July 30, 2007 Amendment (excerpt) (Plaintiff's Ex. I, Dkt. No. 94-10),

November 23, 2008 Appeal Brief (excerpts) (Plaintiff's Exs. K and L, Dkt. Nos. 94-12 and 94-13). **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7).

Defendants, in response, partially agree with Plaintiff. Defendants agree that "labels" are in electronic form because: (1) a "digital label" is "digital;" and (2) the other claim language shows that the "label"/"labels" are in electronic form. Dkt. No. 96 at 12. But Defendants disagree with the remainder of Plaintiff's proposed construction. Defendants submit that "label" is an ordinary English word that is used in the Asserted Patents according to its plain and ordinary meaning. It does not have a special definition according to Defendants. *Id*. at 13.

Defendants argue that Plaintiff's proposed construction improperly: (1) renders other claim language superfluous, *id*. at 13–14; (2) excludes exemplary embodiments, specifically "hybrid digital labels" and "quantitative" labels, *id*. at 14–15; and (3) ignores the fact that the ordinary meaning of "label" is used in the Asserted Patents and the prosecution history, *id*. at 15–16. In addition, Defendants argue that Plaintiff's proposed constructions would render the claims indefinite as it would be uncertain whether meta-tags would fall within the scope of the "label" limitation. *Id*. at 17–19. Finally, Defendants argue that under the plain and ordinary meaning of "label," the claims are not limited to the "labels" which Plaintiff invented. That renders the claims invalid. *Id*. at 19–20.

In addition to the claims, Defendants cite the following intrinsic and extrinsic evidence to support their position. **Intrinsic evidence**: '665 Patent col.4 ll.55–56; '339 Patent File Wrapper May 21, 2004 Response/Amendment (Defendants' Ex. 11, Dkt. No. 96-12), November 9, 2007 Fax (Defendants' Ex. 2, Dkt. No. 96-3); '807 File Wrapper July 25, 2008 Response to Office Action (Defendants' Ex. 10, Dkt. No. 96-11), November 23, 2008 Appeal Brief (excerpt)

(Plaintiff's Ex. K, Dkt. No. 94-12). **Extrinsic evidence**: Merriam-Webster Dictionary, "label", available at http://www.merriam-webster.com/dictionary/label.

Plaintiff replies that Defendants' proposed construction does not account for the fact "that the entirety of the intrinsic record is directed to describing the uniqueness and novelty of the claimed 'digital labels.'" Dkt. No. 98 at 3. *First*, with respect to superfluous claims language, Plaintiff argues that his proposed construction does not conflict with other claim language and that any redundant language would be minimal and not confusing. For example, Plaintiff argues that the jury will understand the proposed construction of label and still understand that the label can further represent a separately claimed label with specific qualitative or descriptive data or characteristics. *Id*. at 3–4. *Second*, with respect to potentially excluded exemplary embodiments, Plaintiff argues that the "hybrid digital label" is a combination of digital labels and the prior-art word search. The claims, according to Plaintiff, are directed to the digital label portion of a "hybrid digital label," and are not directed to the prior-art word search portion of that label. Plaintiff also argues that "quantitative" labels are encompassed under the proposed construction as representing "descriptive data." *Id*. at 4–5. *Third*, with respect to "label" being used according to its common meaning to describe the prior art, such use is distinct from the use of "label" to describe the claimed digital labels. *Id*. at 5–6. *Finally*, with respect to whether the claims are indefinite under the proposed construction, they are not—meta-tags are not within the meaning of "digital label" because they are not symbolic. *Id*. at 6. Plaintiff cites further **intrinsic evidence** to support his position: '665 Patent col.6 ll.28–32, 60–64; '339 Patent File Wrapper May 21, 2004 Response/Amendment (Defendants' Ex. 11, Dkt. No. 96-12).

<u>**Analysis**</u>

The parties agree that the "labels" in the claimed invention are electronic, whether inherently or in the context of the entire claim, and therefore all claimed "labels" are "digital labels." The parties dispute (1) whether "labels" are necessarily symbolic, and (2) whether "labels" are necessarily limited to representing qualitative or descriptive data or characteristics. The Court is not convinced that the claim terms are understandable without construction. Nor is the Court convinced that Plaintiff's proposed construction properly captures the scope of these terms.

As stated in the Asserted Patents, Plaintiff, the sole inventor of the Asserted Patents, believed that Internet content, specifically websites, could not be identified in a search except by inspection of their content. '665 Patent col.1 ll.31–44. Thus, he noted, searches at the time of invention connected content publishers with their audience (surfers) by searching the Internet content for words or phrases that matched the words or phrases in a surfer's query (the "word match" searches). *Id.* at col.1 ll.33–59. Plaintiff noted shortcomings in these word-match searches, namely that they "*only give clues as to a site's nature, not unambiguous information about a site or its publisher*. As a result, searches generally yield[ed] a large number of matches, most of which [did] not answer the surfer's needs." *Id.* at col.1 ll.59–62 (emphasis added). And Plaintiff noted the way in which the industry dealt with these shortcomings: it used humans to manually assemble sites according to categories to create listings similar to "Yellow Pages" listings. *Id.* at col.2 ll.11–24.

The inventor criticized these prior-art approaches and proposed a different solution: label the websites and use the labels, not the content, to identify websites relevant to the surfer's query. *Id.* at col.1 l.59 – col.3 l.57. In explaining the invention, Plaintiff likened the state of the

art of the Internet to an unorganized library in which a reader located information in a book by reading all of the books in the library. He explained that his invention improved the Internet by organizing it in a way akin to organizing the books in the library by category and then searching for information in the books by reference to information about the books codified on index cards:

> There is provided a Host Website system and method in which subscribers label their own products and services and in which similarly labelled objects and services are stored in common locations with hierarchical multi-parameter labels.

> The system includes Internet-related data-gathering, labelling, storing and searching methods. The system and method can best be appreciated by metaphor: consider the Internet as a library whose books (websites) are not only scattered at random but also indistinguishable from each other except upon actually being opened. Internet portals are like librarians who are resigned to the fact that the books (websites) are in disarray, but purport to help readers by speed-reading. The present invention creates order in the library by establishing discrete sections where books (websites) can be organized by category, and by codifying information about each book (website) on index cards so that readers can more easily identify the books (websites) they need.

*Id*. at col.2 ll.51–67. The "labels" of the Asserted Patents are akin to the index cards of the metaphorical library.

The labels are described as "evidencing [] identified qualitative characteristics" of the website or the labelling-service subscriber that are identified in response to a series of questions posed "with a view to determining qualitative characteristics." *Id*. at col.3 ll.12–33 (stating an example of labeling: "If A [e.g., subscriber clicked a box saying it offers scholarships for minorities], then B [instruction to computer to write an appropriate code, e.g., 'mnsch', and associate it with this listing]").

The Asserted Patents define the "labels" of the invention:

> As discussed above, subscribers label their websites and the labels are digitized. *A "label" is something which identifies contents, or provides information about the subscriber or his website*. Generally, the labels are multi-parameter digital labels. That is, a plurality of labels, each one *conveying unambiguous qualitative data about an item, its maker, or its owner*, in digital form are created. This permits an item to be identified by computers according to the presence, absence,

14

> or configuration of the labels. An example of two-parameter labelling is to label a list of people. In computer field "A", place a "0" or a "1" to indicate if a person is male or female, respectively. In field "B", place a 0 to indicate a college graduate, and a blank (null entry) otherwise. Should one want to identify males who are not college graduates, the computer would search Field A for 0s, and Field B for null entries. The conjunction of the two sets would yield the desired list of males.

*Id*. at col.4 l.54 – col.5 l.3 (emphasis added). That is, the "labels" of the invention convey "unambiguous qualitative data about an item, its maker, or its owner."

With reference to the library metaphor, the "labels" serve as index cards to Internet content in that they contain information about websites that allows one to identify a desired website without examining the content of the website:

> At any [time after creation of the labels], any subscriber could be searched for through the Host Website on the basis of any configuration of digital labels, e.g., state-sponsored universities in California which offer minority-eligible scholarships. To perform this search, a Host Website computer would scan its database for listings which have the "mnsch" label as well as the particular labels for the other characteristics of being a school, more precisely a university, state-sponsored, in California.
>
> Searches within a Host Website, with a defined scope, can therefore be more precise and direct than is possible under any currently-used search method on the Internet. Most important, from the viewpoint of the subscriber, the multi-parameter digital labelling and the Host Website together provide assurance that it will be found by its target audience—not the case for most websites today. For example, a hypothetical Chinese restaurant, if it had a website, would be unlikely to be found through a portal unless one knew its exact name; whereas if it were listed on a hypothetical Host Website on New York City, it would surely be found by many persons under varying circumstances and search parameters. Moreover, when found through a Host Website, a website would be in a high-relevance list and on the first few pages of hits, not the case with portal search results, in which the valid answers if any are often hidden in a sea of irrelevance.

*Id*. at col.3 ll.34–57.

The Court does not understand Plaintiff's proposed construction of "label" to clarify the meaning of the term. The Asserted Patents make clear that a label is a symbol because the label is symbolic of a qualitative characteristic about the subject being labeled. *See, e.g.*, *id*. at col.4 ll.16–23 (contrasting labels as "symbols" with word-matches "which are mere character-strings

of unknown significance"), col.7 ll.48–54 (contrasting labels as "symbols" from "[w]ord-matching and category-listing activities [that] are not symbolic in structure"). It is not clear how a "symbol" is distinct from a "designation" under Plaintiff's construction. Nor is it clear how qualitative data is distinct from qualitative characteristics, or how a qualitative characteristic is distinct from a descriptive characteristic. Plaintiff's construction fails to account for the unambiguous nature of the label, i.e., the nature of the particular quality associated with the label is unambiguous.

The "symbolic" nature of labels does not exclude "hybrid digital labels" from the scope of the claims. The "hybrid digital label" denotes a particular characteristic of the subject because it is symbolic of qualitative data pertaining to the subject and also includes a particular instance of that characteristic. As explained in the Asserted Patents, "[a] hybrid digital label is one in which the field is unambiguously digitally defined as a certain kind of field, but the subscriber entry in the field is a character string." *Id*. at col.6 ll.33–34. The patents provide an illustrative example in which the field (i.e., characteristic of the subject) is "wine merchant stock list" and the entry is a particular wine carried by the subject wine merchant. *Id*. at col.6 ll.35–64. Thus, the hybrid digital label is a hybrid of the digital label (symbolic of a characteristic of the wine merchant, its stock list) and textual content (the name of the stocked wines set forth in text). The Asserted Patents explain this in contrast to the name of particular wine appearing haphazardly in Internet content, in which the appearance of the name has no meaningful significance until read in context of the website in which it appears. *See id*. at col.6 ll.46–60.

The Court does not understand "qualitative data" as used in the Asserted Patents to exclude numerical, or "quantitative," information as Defendants propose. Dkt. No. 96 at 15. What Defendants characterize as "quantitative" characteristics, and conclude are not

"qualitative" characteristics, namely height, weight, age, sales, profits, and number of employees, are simply qualities of a subject entity that may be expressed numerically and that can be used to identify the subject. The patent sets forth examples of "qualitative characteristics" that expressly include numerical data that can be used to identify a particular subject:

> In the process of creating its listing online, each subscriber is asked questions by the Host Website computer, with a view to determining qualitative characteristics, such as: general nature (e.g., school); more specific nature (e.g., university); an enumeration of its activities, services, or products (e.g., medicine, law, business, etc.); *its price range* or an indicator thereof (e.g., state-sponsored); its headquarters and/or operating location(s) (e.g., Los Angeles, Santa Barbara, etc.); its payment and credit practices (e.g. scholarship for minorities); and similar data depending on the nature of the subscriber.
>
> The Host Website computer poses questions automatically, takes account of previous answers, and avoids asking inapplicable questions. When the data-gathering sequence is concluded (a process of about 10 minutes), it converts the answers into a plurality of digital labels evidencing each of the identified qualitative characteristics. This can be effected with almost any programming language capable of handling instructions in the form "If A [e.g., subscriber clicked a box saying it offers scholarships for minorities], then B [instruction to computer to write an appropriate code, e.g., "mnsch", and associate it with this listing].

'665 Patent col.3 ll.13–33 (emphasis added); *see also*, '339 File Wrapper November 9, 2007 Fax at 4 ("qualitative data" means "data that can be used to differentiate one website from another in a meaningful way") (Defendants' Ex. 2, Dkt. No. 96-3 at 5).)

Finally, the Court expressly rejects Defendants' invalidity arguments based on 35 U.S.C. § 112, ¶ 2. First, the Court rejects Defendants' argument based on *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336 (Fed. Cir. 2002). In *Allen*, the Federal Circuit held that certain claims were invalid because the patent's description of the invention was contrary to the plain and unambiguous meaning of the language in the claims. The patent described the invention as essentially having two features that could not pivot perpendicularly to each other, yet the claims described two features that could *only* pivot perpendicularly to each other. *Id*. at 1349. Unlike the

patent in *Allen*, the Asserted Patents do not include a definition of the invention in the description that is contrary to the language of the claims with respect to "label" and "digital label."

Second, the Court rejects the argument that any claims are indefinite because Defendants do not understand how a meta-tag is not a "label" or a "digital label" under Plaintiff's proposed constructions. The Court declines to consider whether a meta-tag qualifies as a label at this stage of the case and whether that determination is dispositive of the validity of any claim. The Court does, however, note that the prosecution history of record does not rise to the level of disclaimer of meta-tags; rather, meta-tags were characterized as failing to clearly carry meaning about the website. *See* '807 File Wrapper July 25, 2008 Response at 7 (Defendants' Ex. 10, Dkt. No. 96-12 at 8); '339 File Wrapper November 9, 2007 Fax at 1 (Defendants' Ex. 2 , Dkt. No. 96-3 at 2).

The meanings of "label" and "digital label" are not ambiguous. As the Federal Circuit stated in *Phillips*:

> While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction. Instead, we have limited the maxim to cases in which the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.

415 F.3d at 1327 (citations and quotation marks omitted). Here, as in *Phillips*, the requested validity analysis is inappropriate.

Accordingly, the Court construes "label" and "digital label" as follows:

- "label" means "something symbolic of unambiguous qualitative data about an item, its maker, or its owner"; and

- "digital label" means "something symbolic of unambiguous qualitative data about an item, its maker, or its owner, in digital form."

### B.    "universally-agreed convention" / "agreed convention"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "universally-agreed convention"<br><br>• '339 Patent Claim 1 | Plain and ordinary meaning.<br><br>**Alternative**: "Set of rules governing mutual users in the creation and encoding of data." | Indefinite. |
| "agreed convention"<br><br>• '333 Patent Claim 1 | Plain and ordinary meaning.<br><br>**Alternative**: "Set of rules governing mutual users in the creation and encoding of data." | Indefinite. |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits that "agreed convention" and "universally-agreed convention" are variations of the same term and carry the same meaning. Plaintiff submits that an "agreed convention" is a set of rules that governs the production of digital labels. Dkt. No. 94 at 17–18, 25. Plaintiff further submits that "agreed" and "universally agreed" mean that all digital labels are produced using the same common set of rules. *Id.* at 18–19, 25–26.

In addition to the claims, Plaintiff cites the following intrinsic and extrinsic evidence to support his position. **Intrinsic evidence**: '665 Patent col.2:28–33, col.5 ll.63–65, col.14 ll.47–53; '339 Patent File Wrapper November 9, 2007 Fax (excerpt) (Plaintiff's Ex. M, Dkt. No. 94-14); '325 Patent File Wrapper October 25, 2011 Amendment (excerpt) (Plaintiff's Ex. Q, Dkt. No. 94-18). **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7).

Defendants respond that "agreed convention" and "universally-agreed convention" must mean something different than simply "convention" since all words in a claim should be given

effect. Dkt. No. 96 at 29. And Defendants further respond that the Asserted Patents provide no guidance as to how a convention becomes an "agreed convention" or a "universally-agreed convention." Therefore, the meaning of these terms and how they differ from each other is uncertain, which renders the claims indefinite. *Id*. at 30–31. In addition to the claims, Defendants cite the following **intrinsic evidence** to support their position: '339 Patent File Wrapper November 9, 2007 Fax (Defendants' Ex. 2, Dkt. No. 96-3).

Plaintiff replies that in order for a convention to be a convention, it must be agreed upon and used in the same manner by participants to the convention. Dkt. No. 98 at 10. He further replies that from the perspective of one of skill in the art in the pertinent field, the terms refer to rules governing mutual users in the creation and encoding of data. The users must agree to and abide by the convention to use the digital label methodology. *Id*.

**Analysis**

The parties agree on the meaning of convention but dispute whether "agreed" and "universally-agreed" add anything to the meaning of "convention." The parties further dispute whether it is reasonably certain to one of skill in the art what those phrases add. The claim terms at issue are used in the context of the convention by which the data about the labeled website is "created and encoded." '339 Patent Claim 1 ("creating and encoding data about the searchable content of a website . . . according to a universally-agreed convention"); '333 Patent Claim 1 ("creating and encoding data on the searchable content of a website . . . according to an agreed convention"). The Court is not persuaded that these claim terms are indefinite.

At the onset, the Court rejects Defendants' contention that the terms "convention," "agreed convention," and "universally-agreed convention" ***must*** have different meanings. *See, e.g.*, *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380–81 (Fed. Cir. 2006)

("claim drafters can also use different terms to define the exact same subject matter"); *Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir. 2002) (construing "computer" and "computer system" to mean the same thing because "the patent in this case provides no indication that the two terms mean different things").

The descriptions in the Asserted Patents do not mention an "agreed convention" or a "universally-agreed convention." The only mention of these terms in the prosecution history of record states that the data about a website reflected in the labels would be "encoded according to an agreed convention" or "encode[d] according to a convention to structure the organization of data." *See* '339 Patent File Wrapper November 9, 2008 Fax at 1 ("encoded according to an agreed convention") (Defendants' Ex. 2, Dkt. No. 96-3 at 2); '325 File Wrapper October 25, 2011 Amendment at 6 ("encoding according to a universally established convention") (Plaintiff's Ex. Q, Dkt. No. 94-18 at 2).

Plaintiff's expert opines that from the perspective of one of ordinary skill in the art, a convention is an "accepted set of rules." The "agreed convention" is merely "an adopted set of rules governing the creation and encoding of data," and the use of "universally-agreed convention" means that "all labels and data are created and encoded using the same common set of rules." Garlick Decl. ¶¶ 51–54, 69–71.

While the Asserted Patents do not expressly mention "agreed convention" or "universally-agreed convention," they do provide guidance on "agreement" in the context of using and creating digital labels. This guidance supports Plaintiff's contention that a convention is agreed to by those who use it.

For instance, the patents explain that "[b]y establishing an agreed context for interaction between publishers and users, Host Websites greatly facilitate the [search] process." '665 Patent

col.12 l.56 – col.13 l.49. The Patents describe the Host Website as a "system . . . in which subscribers label their own products and services and in which similarly labelled objects and services are stored in common locations with hierarchical multi-parameter labels." *Id*. at col.2 ll.51–54. The patents further note that,

> In accordance with one feature of the present invention, a specialized Digital-Label Website (Host Website) is established, with the principal purpose of creating and domiciling multi-parameter digital labels. Alternatively, several Host Websites could be established, one for each specified subject. Owners of websites (subscribers) would be free to select which of these, or how many of these, to be digitally labelled on. The advantage of this approach is that in each distinct such Host Website there could be a common context for publishers and users, and each subject's idiosyncrasies could be taken into account. This would simplify both the process of creating labels and of searching.

*Id*. at col.5 ll.19–30. Thus, agreement to the common context is through use of the Host Website by the users and publishers.

The Asserted Patents contemplate agreement through use. Therefore a convention becomes "agreed" or "universally-agreed" when the participants adhere to its rules during use. This comports with Dr. Garlick's unrebutted opinion that to one of skill in the art, data is created or encoded according to an "agreed convention" or a "universally agreed convention" when it is created or encoded using the same common set of rules.

Defendants have not established by clear and convincing evidence that either "universally-agreed convention" or "agreed convention" render the claims indefinite. Accordingly, the Court rejects Defendants' indefiniteness argument and determines that the terms have their **plain and ordinary meaning** without need for further construction.

**C.** **"wherein each digital label <u>uniquely refers to</u> and represents a particular item of qualitative information" / "wherein each digital label represents and comprises a <u>unique reference to</u> a specific item of qualitative information"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "wherein each digital label <u>uniquely refers to</u> and represents a particular item of qualitative information"<br><br>• '665 Patent Claim 1 | Plain and ordinary meaning. | Indefinite. |
| "wherein each digital label represents and comprises a <u>unique reference to</u> a specific item of qualitative information"<br><br>• '665 Patent Claim 55 | Plain and ordinary meaning. | Indefinite. |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**<u>The Parties' Positions</u>**

Plaintiff submits that the "unique" language indicates that a particular label refers to only a single parameter of the claims' "multi-parameter qualitative data." Dkt. No. 94 at 33. In addition to the claims, Plaintiff cites the following **extrinsic evidence** to support his position: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7).

Defendants respond that for the claims which require multi-parameter digital labels, the multi-parameter digital labels necessarily represent more than a single item of qualitative information. Therefore, according to Defendants, the claims are indefinite because they require the digital label to simultaneously represent more than a single item of information and only a single item of "unique" information. Dkt. No. 96 at 32. In addition to the claims, Defendants cite

the following **intrinsic evidence** to support their position: '665 Patent fig.2; '339 Patent File Wrapper November 9, 2007 Fax (Defendants' Ex. 2, Dkt. No. 96-3).

Plaintiff replies that a "multi-parameter digital label" is a plurality of labels with each label representing a single item of data. A "multi-parameter digital label" is not a unitary digital label that represents multiple items. Dkt. No. 98 at 10–11. Plaintiff cites further **intrinsic evidence** to support his position: '665 Patent col.4 l.55 – col.5 l.2, col.12 ll.35–49.

### <u>Analysis</u>

The Asserted Patents define a "multi-parameter digital label" as a plurality of independent labels: "[g]enerally, the labels are ***multi-parameter digital labels***. That is, ***a plurality of labels***, ***each*** one conveying unambiguous qualitative data about an item, its maker, or its owner, ***in digital form***." '665 Patent col.4 ll.57–60 (emphasis added). Thus, the "multi-parameter digital labels" of the claims refers to the "plurality of digital labels for each said website or internet posting" or "plurality of digital labels for each element of the content" recited in the claims. There is nothing inconsistent about a multi-parameter digital label comprising a plurality of individual digital labels, each of which uniquely refers to a specific item of information.

Defendants have not proven by clear and convincing evidence that the "uniquely refers to" or "unique reference to" language renders the claims indefinite. Accordingly, the Court rejects Defendants' indefiniteness argument and determines that the terms have their **plain and ordinary meaning** without need for further construction.

### D. "search . . . for subscriber digital labels" / "search . . . based on the labels"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "searches based on the labels [. . . for stored websites]"<br><br>• '339 Patent Claim 1 | "Dynamically filter digital labels according to configurations in accordance with the unique desires of the person directing the search" | Plain and ordinary meaning. |
| "search said subscriber database for subscriber digital labels [identifying subscriber qualities]"<br><br>• '807 Patent Claim 1 | "Dynamically filter digital labels according to configurations in accordance with the unique desires of the person directing the search" | Plain and ordinary meaning. |
| "searches [and record retrievals] based on the labels [. . . for said websites or records]"<br><br>• '333 Patent Claim 1 | "Dynamically filter digital labels according to configurations in accordance with the unique desires of the person directing the search" | Plain and ordinary meaning. |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits that "search . . . based on the labels" expresses the same concept as "search . . . for subscriber digital labels." Plaintiff further submits his proposed construction captures the concept that the claimed search is not simply a word search or categorical listing. Dkt. No. 94 at 11, 15–16. Plaintiff argues that the Asserted Patents describe the claimed search as a user-defined multi-parameter search utilizing the digital labels to locate content based on the qualitative characteristics of the content. *Id.* at 12–13. And Plaintiff argues that the claimed search was explained during prosecution as one that manipulates the digital labels to locate content having the requested characteristics represented by the digital labels. *Id.* at 13–14. He

further argues that the Asserted Patents describe embodiments in which an artificial intelligence is used to improve the search and requires that the digital labels be manipulatable. *Id.* at 14.

In addition to the claims, Plaintiff cites the following intrinsic and extrinsic evidence to support his position. **Intrinsic evidence**: '665 Patent col.2 ll.4–8, 34–42, col.3 ll.34–57, col.3 l.62 – col.5 l.15, col.5 ll.34–36, col.7 l.28 – col.10 l.3, col.13 l.65 – col.14 l.19, col.15 ll.6–9, col.22 l.60 to col.23 l.3; '339 Patent File Wrapper April 26, 2004 Amendment (excerpt) (Plaintiff's Ex. H, Dkt. No. 94-9), November 9, 2007 Fax (excerpt) (Plaintiff's Ex. M, Dkt. No. 94-14), January 6, 2009 Appeal Brief (excerpt) (Plaintiff's Ex. P, Dkt. No. 94-17); '807 Patent File Wrapper July 30, 2007 Amendment (excerpt) (Plaintiff's Ex. I, Dkt. No. 94-10), November 23, 2008 Appeal Brief (excerpt) (Plaintiff's Ex. K, Dkt. No. 94-12). **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7); Douglas A. Downing et al., *Dictionary of Computer and Internet Terms* (7th ed. 2000) (Plaintiff's Ex. N, Dkt. No. 94-15); Bryan Pfaffenberger, *Webster's New World Dictionary of Computer Terms* (8th ed. 2000) (Plaintiff's Ex. O, Dkt. No. 94-16).

Defendants respond that "search," as used in the Asserted Patents, is an ordinary and familiar English word. Defendants also respond that the claimed "searches" are "based on" or "for" the labels, as expressed apart from the term "search." Dkt. No. 96 at 20. Defendants argue that "search" is not specially defined in the intrinsic record but is instead used according to its ordinary meaning to describe both the prior art and the claimed invention. *Id.* at 21. According to Defendants, the Asserted Patents do not distinguish the claimed search from the prior art on how the search is performed, but on what is searched, i.e., the digital labels. *Id.* at 21–22. And Defendants further argue that the artificial-intelligence searches described in the Asserted Patents are not the subject of the claims which are directed to the searches "for" or "based on" the labels.

*Id.* at 23. Finally, Defendants argue that Plaintiff's proposed construction would render the claims indefinite because (1) it is unclear what makes a desire "unique" and (2) whether a configuration is "in accordance" with a desire is a subjective determination without any objective standard by which to make the determination. *Id.* at 24.

In addition to the claims, Defendants cite the following intrinsic and extrinsic evidence to support their position. **Intrinsic evidence**: '665 Patent col.3 ll.37–41, col.5 ll.16–17, col.7 ll.57–58, col.7 l.62 – col.8 l.25, col.8 ll.26–32, col.13 ll.35–37. **Extrinsic evidence**: Merriam-Webster Dictionary, "Search", available at http://www.merriam-webster.com/ dictionary/search.

Plaintiff replies that the Asserted Patents define the claimed "search" by explaining how searches are performed in the digital-label database. Dkt. No. 98 at 6–7. Plaintiff further replies that the claims are not indefinite under his proposed construction because the phrase "in accordance with the unique desires of the person directing the search" simply means that the search is customized by the user selecting which labels to include in the search. Plaintiff cites further **intrinsic evidence** to support his position: '665 Patent col.6 ll.6–9.

<u>**Analysis**</u>

The parties dispute whether the Asserted Patents define "search" or use its plain and ordinary meaning. The Court is not persuaded that the Asserted Patents redefine "search" as Plaintiff proposes or that his proposed constructions clarify the scope of the claim. Rather, these "search" terms have a readily accessible plain and ordinary meaning: a search "based on" or "for" a label is simply a search for relevant information sources that utilizes labels rather than other information like content. As explained above in the discussion on "labels"/"digital labels," the labels act like a library index card which allows a user to search for and locate relevant information sources without directly searching the sources.

The Asserted Patents use the term "search" generically to refer to both the label-based search and the prior-art search approaches. *See, e.g.*, '665 Patent col.1 ll.13–17 ("The present invention relates to data-gathering and digital labelling methods for websites, and the structure and operating processes of a specialized Host Website whose function is to maintain a library of website digital labels and to use these labels to assist in Internet searches."), col.3 ll.42–44 ("Searches within a Host Website, with a defined scope, can therefore be more precise and direct than is possible under any currently-used search method on the Internet."), col.4 ll.16–19 ("All existing search technologies on the Internet are based on word-matches or 'keywords', which are mere character-strings of unknown significance."). Thus, while the Plaintiff disparaged the prior-art search, the term "search" is used in the patent according to its broad plain and ordinary meaning to refer to multiple different search approaches. The use of "search" in the patents does not justify Plaintiff's proposed constructions. *See Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

And while a label-based search may proceed as Plaintiff proposes, it is not clear that any label-based search necessarily proceeds in such a fashion. For example, with respect to the exemplary digital-label based search for a particular class of university, the patents provide:

> The Host Website computer poses questions automatically, takes account of previous answers, and avoids asking inapplicable questions. When the data-gathering sequence is concluded (a process of about 10 minutes), it converts the answers into a plurality of digital labels evidencing each of the identified qualitative characteristics. This can be effected with almost any programming language capable of handling instructions in the form "If A [e.g., subscriber clicked a box saying it offers scholarships for minorities], then B [instruction to computer to write an appropriate code, e.g., "mnsch", and associate it with this listing].

> At any later time, any subscriber could be searched for through the Host Website on the basis of any configuration of digital labels, e.g., state-sponsored universities in California which offer minority-eligible scholarships. ***To perform this search, a Host Website computer would <u>scan</u> its database for listings which have the "mnsch" label as well as the particular labels for the other characteristics of being a school, more precisely a university, state-sponsored, in California***.

*Id*. at col.3 ll.22–41 (emphasis added). It is not clear that a "scan" to identify relevant labels is limited to, or even encompassed by, Plaintiff's proposal. The described "scan" search suggests that the search locates a subscriber (or its website) by finding those subscribers (or websites) having the appropriate labels without searching the subscriber content. The search uses the labels as an "index card" to the subscriber content to identify content or subscribers that have the particular qualitative characteristics represented by the labels. *See id*. at col.2 ll.51–67, col.3 ll.13–41. This is what the Court understands to be the plain and ordinary meaning of "search . . . for subscriber digital labels" and "search . . . based on the labels."

Further, the search embodiment described with reference to Figures 6a and 6b does not appear to be coextensive with Plaintiff's proposed construction. Aspects of that embodiment may actually be excluded from the claims under Plaintiff's proposal. For example, it appears that Plaintiff's proposed construction would not be satisfied if the "Wordlinks" searches described in the '665 Patent at column 13 lines 4 through 22 failed to produce a result and therefore no "filtering" of the digital labels was possible. Yet the described search clearly contemplates that the Worldlink search for, or based on, the labels may proceed yet fail to produce a result that would allow filtering. In that case, the exemplary embodiment would resort to the prior-art content search. '665 Patent col.13 ll.35–40. "A construction that excludes a preferred embodiment is rarely, if ever, correct." *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 865 (Fed. Cir. 2004).

Accordingly, the Court rejects Plaintiff's proposed construction as improperly limiting and determines that the terms have their **plain and ordinary meaning** without need for further construction.

### E.    "effective use of . . . digital labels"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "effective use of these multi-parameter digital labels"<br><br>• '665 Patent Claims 1, 55 | Plain and ordinary meaning.<br><br>**Alternative**: "the digital labels and the means for their manipulation is used effectively."<br><br>Defendants identified only the sub-part "effective use" as the phrase in need of construction. | Indefinite. |

**The Parties' Positions**

Plaintiff submits that words of the term are readily understood and are used according to their plain and ordinary meaning. Dkt. No. 94 at 16–17. In addition to the claims, Plaintiff cites the following intrinsic and extrinsic evidence to support his position. **Intrinsic evidence**: '665 Patent col.2 ll.5–7, 30–39, col.3 ll.42–48. **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7).

Defendants respond that the claims are indefinite because (1) whether a use is "effective" is subjective and (2) the Asserted Patents provide no guidance on whether effectiveness is determined from the perspective of the website owner or of the searcher. Dkt. No. 96 at 26–28. In addition to the claims, Defendants cite the following **intrinsic evidence** to support their position: '665 Patent col.1 ll.49–50, 61–62, col.2 ll.34–41; '339 Patent File Wrapper November 9, 2007 Fax (Defendants' Ex. 2, Dkt. No. 96-3).

Plaintiff replies that the claims themselves provide the criterion for whether a use of the digital labels is "effective," namely that the results returned from the search match the parameters stipulated by the searching entity. Dkt. No. 98 at 9.

**Analysis**

The Court is not persuaded that one of skill in the art would fail to understand with reasonable certainty whether a use of multi-parameter digital labels is "effective." The term "effective" is used in the Asserted Patents according to its ordinary and customary meaning to denote that something objectively achieves a particular effect, and not as a subjective term as Defendants posit. *See, e.g.*, '665 Patent col.10 ll.50–54 ("an effective system for discriminating among websites" based on a publisher's labeling), col.13 ll.50–52 (describing prior-art Internet portals posing "effective, if unintended, barrier to entry"). And the Court agrees with Plaintiff that based on the entirety of the claim language, the effect achieved by use of the labels is a match between parameters stipulated in the search and the parameters represented by the labels. *See* '665 Patent Claims 1 and 55.

Defendants have not established by clear and convincing evidence that "effective use of . . . digital labels" renders the claims indefinite. Accordingly, the Court rejects Defendants' indefiniteness argument and determines that the term has its **plain and ordinary meaning** without need for further construction.

F.     **"search engine" / "internet search engine"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "search engine"<br><br>• '339 Patent Claim 1<br>• '333 Patent Claim 1<br>• '325 Patent Claim 7 | "Software for facilitating the identification and retrieval of web content based upon digital labels." | Plain and ordinary meaning. |

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "internet search engine" <br><br> • '325 Patent Claim 7 | "Software for facilitating the identification and retrieval of web content based upon digital labels via the Internet." | Plain and ordinary meaning. |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits that the Asserted Patents: (1) distinguished the claimed search engine from the prior-art word-match/category-list search engines; (2) disparaged the prior-art search-engine approach; (3) defined the claimed search engine as "specially tailored to retrieve content based upon the digital labels;" and (4) established through the prosecution history that the claimed search engine is different from the prior-art search engine in that it is "specially configured to retrieve web content based upon the digital labels." Dkt. No. 94 at 22–23, 27–28.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support his position. **Intrinsic evidence**: '665 Patent col.1 ll.53–57, col.2 ll.12–32, col.3 ll.42–57, col.5 ll.4–15, col.6 ll.6–21, col.7 ll.28–29, 48–54, col.9 l.62 – col.10 l.3, col.13 ll.58–62, col.13 l.66 – col.14 l.8; '339 Patent File Wrapper November 9, 2007 Fax (excerpt) (Plaintiff's Ex. M, Dkt. No. 94-14). **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7); Douglas A. Downing et al., *Dictionary of Computer and Internet Terms* (7th ed. 2000) (Plaintiff's Ex. N, Dkt. No. 94-15); Bryan Pfaffenberger, *Webster's New World Dictionary of Computer Terms* (8th ed. 2000) (Plaintiff's Ex. O, Dkt. No. 94-16).

Defendants respond that "search engine" does not need to be construed, and that Plaintiff's proposed construction improperly introduces a "digital label" limitation into "search engine." Dkt. No. 96 at 25. Defendants argue that because the "digital label" limitation of

Plaintiff's proposed construction is separately recited in many of the claims, the claimed "search engine" does not inherently include such limitation. *Id*. at 25–26.

Plaintiff replies that the plain meaning of "search engine," at the time of the invention, would encompass the prior-art word-search-based engines but not the claimed digital-label-searched-based engine. Therefore, according to Plaintiff, it would be improper to construe "search engine" according to its plain and ordinary meaning. Dkt. No. 98 at 8.

**<u>Analysis</u>**

The Court is neither persuaded that a "search engine" inherently requires a search based on digital labels, nor persuaded that the plain and ordinary meaning of "search engine" is limited to the word-search or category-tree search engines of the prior art. Rather, the term "search engine" has a broad plain and ordinary meaning that encompasses systems based on various search-methodologies.

The Asserted Patents use the term "search engine" to refer to the prior art systems which are expressly described as not based on digital labels. *See, e.g.*, '665 Patent col.1 ll.53–61 (describing a word-match search engine), col.4 ll.4–6 (noting the limits of a conventional search engine), col.5 ll.4–7 (noting the advantages of label-based systems over "search engines or systems that merely list sites under various categories"). Thus, the use of "search engine" in the patents does not justify, or allow, Plaintiff's proposed construction. *See Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.").

But the plain and ordinary meaning of "search engine" is not limited to a system relying on a word-based or category-based search. *See, e.g.*, Douglas A. Downing et al., *Dictionary of*

*Computer and Internet Terms* at 431 (7th ed. 2000) ("search engine" is "a computer program that searches through large amounts of text ***or other data***" (emphasis added))(Plaintiff's Ex. N, Dkt. No. 94-15 at 5); Bryan Pfaffenberger, *Webster's New World Dictionary of Computer Terms* at 478 (8th ed. 2000) ("search engine" is "any program that locates needed information in a database") (Plaintiff's Ex. O, Dkt. No. 94-16). The extrinsic evidence suggests that a "search engine" is any program that searches for information, regardless of the form of the information— it is not limited to word-based or category-based search methods.

Accordingly, the Court construes "search engine" and "internet search engine" as follows:

- "search engine" means "a computer program that searches through text or other data"; and

- "internet search engine" means "a computer program that searches through text or other data on or through the Internet."

### G.     "internet search engine or internet browser program or service"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "internet search engine or internet browser program or service"<br><br>• '325 Patent Claim 7 | The term "**Internet search engine**" means: "Software for facilitating the identification and retrieval of web content based upon digital labels via the Internet."<br><br>The term "**Internet browser program**" means: "Software that enables a user to navigate the Internet based upon digital labels."<br><br>The term "**Internet browser service**" means: "Software that performs ancillary or background routines to a browser program (e.g., a plug-in or web agent) based upon digital labels." | Indefinite. |

### The Parties' Positions

Plaintiff resubmits it positions and arguments for "internet search engine" and submits that (1) "internet browser program or service" means "internet browser program or internet browser service," and (2) "internet browser program" and "internet browser service" should be construed according to their ordinary technical meanings as tailored to the digital-label environment as described and claimed in the Asserted Patents. Dkt. No. 94 at 32–33.

In addition to the claims, Plaintiff cites the following intrinsic and extrinsic evidence to support his position. **Intrinsic evidence**: '325 Patent col.10 ll.35–42; '339 Patent File Wrapper November 9, 2007 Fax (excerpt) (Plaintiff's Ex. M, Dkt. No. 94-14). **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7); Douglas A. Downing et al., *Dictionary of Computer and Internet Terms* (7th ed. 2000) (Plaintiff's Ex. N, Dkt. No. 94-15); Bryan

Pfaffenberger, *Webster's New World Dictionary of Computer Terms* (8th ed. 2000) (Plaintiff's Ex. O, Dkt. No. 94-16).

Defendants respond that when "or" is used in a patent-claim list each member of the list is exclusive of the other members. Defendants assert that when a claim describes an invention using the phrases "internet search engine," "internet browser program," and "internet browser service" linked by "or," the invention does not encompass a convention that is promulgated by both a "search engine" and a "browser program." According to Defendants, the claim is indefinite because Plaintiff did not invent such a system. Dkt. No. 96 at 34.

**Analysis**

The parties dispute whether "or" in the claim term necessarily means that the items in the list are mutually exclusive. In this case, an exclusive "or" may render the claims indefinite. The Court determines that Defendants have not proven the claims indefinite by clear and convincing evidence.

The Court is not convinced that "or" in the term necessarily means that "internet search engine," "internet browser program," and "internet browser service" are mutually exclusive alternatives. It is not clear that the cases that Defendants cite dictate this result. In *Kustom Signals, Inc. v. Applied Concepts, Inc.*, the Federal Circuit construed "or" in a process list to denote a mutually exclusive list based on the presence of the words "either" and "or." 264 F.3d 1326, 1329 (Fed. Cir. 2001). In *Schumer v. Laboratory Computer Systems, Inc.*, the issue before the court was whether each item in a process list joined by "or" must be present—i.e., whether "or" meant "and." 308 F.3d 1304, 1311 (Fed. Cir. 2002). *Schumer* did not hold that "or" denoted a mutually exclusive list, but rather that infringement occurs if "any one of the [process list] is performed." *Id.* at 1312.

Courts have noted that "or" may be used to denote an inclusive list—it is not restricted, as Defendants posit, to denoting an exclusive list. *See, e.g.*, *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 788 (N.D. Tex. 2014) ("The ordinary meaning of 'or,' as used disjunctively, is not to indicate an exclusive alternative—that is, one or the other but not both. At least, that is not the only ordinary usage of the word 'or.' Rather, the word 'or' can be used in both an 'inclusive' sense ('A or B [or both]') and an 'exclusive' sense ('A or B [but not both]')." (quoting *Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, 1254 n.8 (11th Cir. 2010))); *B-50.com, LLC v. InfoSync Servs., LLC*, No. 3:10-cv-1994, 2014 U.S. Dist. LEXIS 9403, at *20–*22 (N.D. Tex. Jan. 27, 2014) ("Authorities agree that *or* has an inclusive sense as well as an exclusive sense. . . . Although 'or' is used in both senses in common usage, the meaning of *or* is usually inclusive." (quoting Bryan A. Garner, *Garner's Dictionary of Legal Usage* 639 (3d ed. 2011) (emphasis in original, quotation and modification marks omitted)); *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 2:12-cv-764, 2015 U.S. Dist. LEXIS 3629, at *10 (E.D. Tex. Jan. 13, 2015) (Bryson, J.) ("It is well recognized that the word 'or' can be used in either an inclusive or an exclusive sense, depending on context."). Indeed the Federal Circuit has held that, depending on the context, the word "or" can be either conjunctive or disjunctive. *See, e.g.*, *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 680 (Fed. Cir. 2015) ("The conjunctive interpretation is also consistent with proper grammar, where the phrase 'not A, B, *or* C' means 'not A, not B, *and* not C.'"). Lower courts have also construed "or" in a list of items in a patent claim to be inclusive. *See, e.g.*, *B-50.com, LLC*, 2014 U.S. Dist. LEXIS 9403, at *21–*23 (construing "enables the restaurant-industry user to view or obtain the generated custom report using the Internet" to encompass, but not require, both viewing and obtaining (modification marks omitted)).

The claim at issue here, Claim 7 of the '325 Patent, recites a step of "encoding personal preference digital labels" and a step of "conforming the encoding to a convention promulgated by an internet search engine or internet browser program or service." '325 Patent col.24 ll.26–33. The Asserted Patents separately describe personal preference digital labels as being stored in various ways, for example, in computer files, browser files, and in the website. *Id*. at col.9 l.66 – col.10 l.48. The Asserted Patents contemplate controlling access to websites based on the digital labels through a variety of mechanisms such as specially designed browsers and filters. *Id*. Nothing in the claim or specification and drawings indicates that the personal preference digital labels must conform solely to a single convention in order to effectively discriminate based on the labels. As such, the Court does not read in such a limitation.

Further, even if the "or" denoted an exclusive list, the Court rejects Defendants' argument based on *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336 (Fed. Cir. 2002). In *Allen*, the Federal Circuit held that certain claims were invalid because the patent's description of the invention was contrary to the plain and unambiguous language of the claims. The patent described the invention as essentially having two features that could not pivot perpendicularly to each other, yet the claims described two features that could ***only*** pivot perpendicularly to each other. *Id*. at 1349. Unlike the patent in *Allen*, the Asserted Patents do not include a definition of the invention in the description that is contrary to an interpretation of "or" as exclusive with respect to whether the encoding convention of the claim is promulgated by only one of an "internet search engine," "internet browser program," or an "internet browser service."

Defendants have not established by clear and convincing evidence that "internet search engine or internet browser program or service" renders the claims indefinite. Accordingly, the

Court rejects Defendants' indefiniteness argument and determines that the term has its **inclusive plain and ordinary meaning**.

**H.** **"stored websites"**

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "stored websites"<br><br>• '339 Patent Claim 1 | Plain and ordinary meaning.<br><br>**Alternative**: "a website stored within a computer system accessible to the search engine."<br><br>A "website" is: "a file or related group of files available on the Internet." | Indefinite. |

**The Parties' Positions**

Plaintiff submits that the plain meaning of "stored websites," when read in the context of the claims, means that the websites are stored on a computer system, and that computer system is accessible to the search engine. Dkt. No. 94 at 24–25. In addition to the claims themselves, Plaintiff cites the following **extrinsic evidence** to support his position: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7); Douglas A. Downing et al., *Dictionary of Computer and Internet Terms* (7th ed. 2000) (Plaintiff's Ex. N, Dkt. No. 94-15). Defendants respond that there is no antecedent basis for "stored websites," therefore, the claims are indefinite. Dkt. No. 96 at 33.

**Analysis**

The dispute here is whether "stored websites" in the last clause of Claim 1 of the '339 Patent (reproduced below and annotated by the Court) requires an antecedent basis for the claims to be definite. The Court is not persuaded that Defendants have proven by clear and convincing evidence that any claim is indefinite because of the "stored websites" term.

Defendants' indefiniteness argument fails for lack of a valid premise. Their argument is entirely premised on the contention that "stored website" is not understandable because the term lacks an antecedent basis. This contention is false on its face. Claim elements and steps are always introduced for the first time in the claim without an antecedent basis in the claim. The claim language at issue, "stored websites," is not preceded by a definite article such as "the" or "said." As such, the indication is that "stored websites" was introduced for the first time in the final clause of the claim. And the indefinite articles that are typically used to introduce a new element, "a" or "an," are not appropriate as "stored websites" is plural. As such, there is no lack of antecedent basis because there is no antecedent reference.

> **'339 Patent**
>
> **1**. A method for labeling of Internet websites comprising:
> creating and encoding data about the searchable content of a website by a creator of said website, or a plurality of websites by each respective website's creator, according to a universally-agreed convention, so as to produce a plurality of labels for each website or each of the plurality of websites, each label representing a particular item of said data, and the incorporation of these labels in a file resident on the website;
> copying and storing the labels on a search engine's own computer; and
> providing public access to the search engine's computer through the Internet for purposes of facilitating searches based on the labels, by the general public, for stored websites.

There can be no real dispute over whether a website is "stored." The claims do not require that websites be stored in any particular fashion or in any particular memory—only that they be stored. Because the claim is entirely silent on the issue, the Court rejects Defendants' contention that the search engine of the claim does not store websites. Whether the search engine does or does not store websites is irrelevant so long as the websites are stored. The Court also rejects Plaintiff's position that the websites must be stored on a computer system accessible to the search engine, again because the claim is silent on that issue. In the context of the claim language, it is clear that the claimed method provides public access to a mechanism to search for stored websites based on the labels. So the stored websites are identified by or through the labels. But it is not clear to the Court that the stored websites must be accessible to the search engine. The websites need only be identifiable by "searches based on the labels."

Defendants have not proven by clear and convincing evidence that the "stored websites" language renders the claims indefinite. Accordingly, the Court rejects Defendants' indefiniteness argument and determines that the term has its **plain and ordinary meaning** without need for further construction.

### I.     "Host Website's computer"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "Host Website's computer"<br><br>• '333 Patent Claim 1 | Plain and ordinary meaning.<br><br>**Alternative**: "a computer system on which a Host Website platform is running." | Indefinite. |

#### The Parties' Positions

Plaintiff submits that the term "Host Website" refers to "a website for creating and storing digital labels" as expressly defined in the Asserted Patents and "Host Website's computer" carries its plain and ordinary meaning. Dkt. No. 94 at 30–31. In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support his position. **Intrinsic evidence**: '665 Patent col.3 ll.1–7, col.5 ll.19–22, 58–60, col.10 l.55 – col.11 l.12, col.15 ll.6–9, 36–47, col.16 ll.6–14, col.17 ll.42–47; '339 Filer Wrapper October 25, 2004 Amendment (excerpt) (Plaintiff's Ex. S, Dkt. No. 94-20). **Extrinsic evidence**: Garlick Decl. (Plaintiff's Ex. F, Dkt. No. 94-7).

Defendants respond that "Host Website's computer" appears to be an erroneous addition to the claim and has no antecedent basis, and therefore the claims are indefinite. Dkt. No. 96 at 33–34. Plaintiff replies that the claim includes an obvious clerical error and that "or Host Website" should be read into the claim immediately following the first recitation of "search engine." Dkt. No. 98 at 11.

<u>**Analysis**</u>

The parties appear to agree that there is an error in Claim 1 of the '333 Patent but they disagree as to the nature of the error. Defendants argue that "Host Website's" was erroneously included in the claim, Dkt. No. 96 at 33–34, whereas Plaintiff argues that "Host Website" was erroneously omitted from the claim, Dkt. No. 98 at 11. Based on the record, the Court determines that "Host Website" was erroneously omitted, that the nature of the error is not subject to reasonable debate, and the Court has authority to correct the error to clarify that "Host Website's computer" has an antecedent basis and therefore the claim is not indefinite.

The Court may correct an obvious error in claim language in a patent infringement suit when "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011). In the claims of the '333 Patent that depend from Claim 1 and reference a "search engine," the claims universally reference "search engine" in conjunction with "Host Website"



'333 Patent

1. A method of labelling at least one of Internet websites and records accessible through the Internet, comprising:
    creating and encoding of data on the searchable content of the website or accessible record according to an agreed convention, so as to produce a plurality of labels for each website or record, or each of the plurality of websites or records, each label representing a particular item of said data;
    incorporating the created labels in a file resident on the website or record;
    copying and storing the labels on a search engine's own computer;
    providing the right of access to the search engine's or Host Website's computer through the Internet for purposes of editing the records; and
    facilitating searches and record retrievals based on the labels, by a plurality of authorized parties each with defined and limited scope or nature of access, for said websites or records.
2. The method of claim 1 further comprising:
    storing the labels in a computer or network by the search engine or Host Website.
3. The method of claim 2, further comprising:
    providing by the search engine or Host Website, an interface which permits each person with a record on the search engine or Host Website to stipulate which parties may have access to the record, and which part of the record may be viewed or retrieved by said stipulated parties, such stipulation being changeable by the person through the interface.

(Claims 1 through 3 are reproduced here and annotated by the Court). *See* '333 Patent col.23 ll.47–48, 50, 52, 59–60, col.24 ll.14–15, 24–25, col.26 ll.12–13. Thus, it is apparent from the face of the patent that the first recital of "search engine" erroneously omitted "or Host

Website's" and the Court construes the claims to include "or Host Website's" inserted into Claim 1 at column 23 line 37 after "search engine's" and before "own computer."

Defendants have not proven by clear and convincing evidence that the "Host Website's computer" language renders the claims indefinite. Accordingly, the Court rejects Defendants' indefiniteness argument and determines that the term has its plain and ordinary meaning and Claim 1 of the '333 Patent is corrected (in underline) as follows:

1. A method of labelling at least one of Internet websites and records accessible through the Internet, comprising:

creating and encoding of data on the searchable content of the website or accessible record according to an agreed convention, so as to produce a plurality of labels for each website or record, or each of the plurality of websites or records, each label representing a particular item of said data;

incorporating the created labels in a file resident on the website or record;

copying and storing the labels on a search engine's or Host Website's own computer;

providing the right of access to the search engine's or Host Website's computer through the Internet for purposes of editing the records; and

facilitating searches and record retrievals based on the labels, by a plurality of authorized parties each with defined and limited scope or nature of access, for said websites or records.

## V.    CONCLUSION

The Court adopts the above constructions set forth in this opinion for the agreed and disputed terms of the Asserted Patents. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 20th day of September, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE