IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EMMANUEL C. GONZALEZ, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | Case No. 2:14-cv-0906 |
| vs. | § | Consolidated Lead Case |
| | § | |
| INFOSTREAM GROUP, INC., | § | JURY DEMAND |
| | § | |
|    Defendant. | § | |
| _____ | | |
| NEW LIFE VENTURES, INC. | § | Case No. 2:14-cv-0907 |
| _____ | | |
| GLOBAL PERSONALS, LLC | § | Case No. 2:14-cv-0952 |
| _____ | | |
| ELITE MARKETING SOLUTIONS, INC. | § | Case No. 2:14-cv-0963 |
| _____ | | |
| SNAP INTERACTIVE, INC. | § | Case No. 2:14-cv-0992 |
| _____ | | |
| TAGGED, INC. | § | Case No. 2:14-cv-0993 |

_____

**PLAINTIFF'S MOTION TO EXCLUDE AND/OR STRIKE THE EXPERT
REPORT AND OPINIONS OF DANIEL MANHEIM**

_____

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 5
II.  LEGAL PRINCIPLES ................................................................................................... 5
III. ARGUMENT ................................................................................................................. 8
   A.  MR. MANHEIM SHOULD BE PRECLUDED FROM TESTIFYING AND/OR OPINING ON EBAY AS AN ANTICIPATORY OR OBVIOUSNESS REFERENCE ........................................................ 8
      1.  Mr. Manheim Fails to Establish the Presence of Every Limitation of the Gonzalez Patents in the eBay Reference ................................................................. 8
      2.  Mr. Manheim Fails to Provide Any Obviousness Analysis Whatsoever With Respect to the eBay Reference ................................................................. 10
   B.  MR. MANHEIM SHOULD BE PRECLUDED FROM TESTIFYING AND/OR OPINING ON EBAY'S DATABASE OR SOURCE CODE ........................................................................... 11
   C.  MR. MANHEIM'S TESTIMONY AND/OR OPINIONS SHOULD BE STRICKEN BECAUSE HE RELIES ON THE INCORRECT LEVEL OF ORDINARY SKILL ............................................. 13
   D.  MR. MANHEIM'S REBUTTAL REPORT SHOULD BE STRICKEN IN ITS ENTIRETY FOR FAILURE TO REBUT DR. GARLICK'S INFRINGEMENT ANALYSIS ..................................... 15
   E.  MR. MANHEIM'S OPINIONS SPECIFICALLY DIRECTED AT MR. GONZALEZ SHOULD BE STRICKEN BECAUSE THEY ARE IRRELEVANT ................................................................ 16
   F.  MR. MANHEIM FAILS TO PROVIDE A RELIABLE ANTICIPATION ANALYSIS OF META-TAGS AND DOES NOT CONDUCT AN OBVIOUSNESS ANALYSIS; THEREFORE, HIS OPINIONS ADDRESSING THOSE INVALIDITY GROUNDS SHOULD BE STRICKEN ............... 16
   G.  MR. MANHEIM'S OPINION IS IRRELEVANT TO SECTION 101 SUBJECT MATTER AND SHOULD BE STRICKEN ...................................................................................... 17
IV.  CONCLUSION ........................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bianco v. Globus Medical,*
  30 F. Supp. 3d 565, 571 (E.D. Tex. 2014)..........................................................................17

*Clear-View Techs., Inc. v. Rasnick*,
  No. 13-cv-02744, 2015 WL 3509384, *2 (N.D. Cal. June 3, 2015).....................................15

*Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*,
  501 F.3d 1254, 1256 (Fed. Cir. 2007).................................................................................14

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-CV-72 DF, 2010 WL 5140809, *1 (E.D. Tex. Sept. 27, 2010) .............................10

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ....................................................................................................passim

*Env'tl Designs, Ltd. v. Union Oil Co. of California,*
  713 F.2d 693, 696 (Fed. Cir. 1983).....................................................................................14

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136, 146 (1997) ......................................................................................................7

*Hathaway v. Bazany*,
  507 F.3d 312, 318 (5th Cir. 2007)...................................................................................7, 11

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342, 1366 (Fed. Cir. 2012).................................................................................14

*Knight v. Kirby Inland Marine, Inc.*,
  482 F.3d 347, 354-55 (5th Cir. 2007)....................................................................................7

*In re Kubin*,
  561 F.3d 1351, 1355 (Fed. Cir. 2009).................................................................................10

*Kumho Tire Co. Ltd. v. Carmichael,*
  536 U.S. 137, 147 (1999) ......................................................................................................6

*Lodsys, LLC v. Brother Intern. Corp.*,
  2:11-cv-0090, 2013 WL 2949959 at *7 (E.D. Tex. June 14, 2013).....................................14

*MediaTek v. Freescale Semi.*,
  11-cv-5341, 2014 WL 971765 at *1 (N.D. Ca. March 5, 2014)..........................................17

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
  608 F.3d 871, 895 (D.C. Cir. 2010), *cert. denied,* 131 S. Ct. 2443 (2011) ..............................7

*Moore v. Ashland Chem., Inc.*,
  151 F.3d 269, 276 (5th Cir. 1998)......................................................................................6

*OPTi, Inc. v. VIA Techs., Inc.*,
  65 F. Supp. 3d 465, 473-74 (E.D. Tex. 2014) ...................................................................8

*Paz v. Brush Engineered Materials, Inc.*,
  555 F.3d 383, 388 (5th Cir. 2009)...................................................................................6, 7

*Seoul Semiconductor v. Nichia,*
  596 F. Supp. 2d 1005, 1010 (E.D. Tex. 2009)..................................................................14

*Spreadsheet Automation Corp. v. Microsoft Corp.,*
  587 F. Supp. 2d 794, 798 (E.D. Tex. 2007) (Folsom, J.) ..................................................6

*Thales Visionix v. U.S.,*
  122 Fed. Cl. 245, 250 (Fed. Cl. 2015)..............................................................................17

*United States v. Schmidt*,
  711 F.2d 595, 598-99 (5th Cir. 1983)................................................................................7

### OTHER AUTHORITIES

Rule 403 ...................................................................................................................................7

Rule 702 ...........................................................................................................................passim

Plaintiff, Emmanuel C. Gonzalez ("Gonzalez"), files this Motion to Exclude and/or Strike the Expert Report and Opinions of Daniel Manheim. In support of the motion, Gonzalez would respectfully show the Court as follows:

## I.  INTRODUCTION

This motion seeks to strike and exclude the expert report of Defendant New Life Venture LLC's ("Defendant" or "New Life")[1] invalidity expert, Daniel Manheim. Mr. Manheim's opinion that U.S. Patent Nos. 7,558,807 ("the '807 Patent") and 7,873,665 ("the '665 Patent") (collectively, "the Gonzalez Patents") are invalid is based entirely off of unsupported and conclusory statements devoid of any substantive analysis as to the validity of the Gonzalez Patents. Such faulty methodology and unreliable facts are insufficient to meet the requirements for expert testimony under Rule 702 and *Daubert*, and these opinions should be stricken.

## II.  LEGAL PRINCIPLES

Under the well-established principles of *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), the Court assumes the role of "gatekeeper" with respect to the admissibility of expert testimony. Expert testimony can be "both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595. Consequently, the Supreme Court has held that "Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure

---

[1] Although the Manheim Report is styled on behalf of both Tagged and New Life, this Court granted Tagged's Motion to Transfer on September 22, 2015 (Dkt No. 111). Upon the Order to Transfer, Gonzalez has consistently considered the case against Tagged to be effectively stayed pending transfer and the development of a new Docket Control Order as to Tagged in the Northern District of California. Indeed, counsel reached an agreement on this point, and Tagged was excused from participating in the court-ordered mediation with Karl Bayer on October 12. Of course, Gonzalez also refrained from pursuing discovery with Tagged following the Order, as it postponed serving deposition notices to Tagged, did not serve a final election of claims as to Tagged, and did not serve infringement or damages expert reports as to Tagged. Gonzalez understands that Tagged now intends to seek some manner of waiver as to discovery and expert reports once this case is transferred, which Gonzalez obviously contests. Gonzalez does not expect Tagged's gamesmanship and "gotcha" approach will be well received in the Northern District of California, as it would not be in this Court. Accordingly, for purposes of this Motion, Gonzalez only addresses the remaining defendant, New Life.

that any and all scientific testimony … is not only relevant, but reliable." *Kumho Tire Co. Ltd. v. Carmichael,* 536 U.S. 137, 147 (1999).

New Life, as the proponent of the testimony, must prove that the proffered expert testimony satisfies Federal Rule of Evidence 702 and the *Daubert* principles. *See, e.g., Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir. 1998). Restyled Rule 702[2] provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. To constitute knowledge that will "help the trier of fact," the proposed testimony must be both relevant and reliable. *See Spreadsheet Automation Corp. v. Microsoft Corp.,* 587 F. Supp. 2d 794, 798 (E.D. Tex. 2007) (Folsom, J.) (citing *E.I. DuPont de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 556 (Tex. 1996)).

An expert's opinion must be more than "subjective belief or unsupported speculation." *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 388 (5th Cir. 2009). "[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory. 'Without more than credentials and a subjective opinion, an experts' testimony that 'it is so' is not admissible.'"

---

[2] Effective December 1, 2011, the Federal Rules of Civil Procedure were amended and largely restyled. The Committee Note to the 2011 Amendments to Rule 702 state that the language change is intended to be nonsubstantive, "stylistic only," and that "[t]here is no intent to change any result in any ruling on evidence admissibility."

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (citation omitted). Trial courts should not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).

"The expert's testimony must be reliable *at each and every step* or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 354-55 (5th Cir. 2007) (emphasis added); *accord Paz,* 555 F.3d at 388.

"[A] judge assessing the proffer of expert … testimony under Rule 702 should also be mindful of other applicable rules. Importantly, Rule 403 … states that relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.' [T]he judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

Expert testimony, like all other evidence, may be excluded under Rule 403 if it would confuse or mislead the trier of fact, or if its probative value would be substantially outweighed by the risk of unfair prejudice to the other party. *See, e.g., United States v. Schmidt*, 711 F.2d 595, 598-99 (5th Cir. 1983). The danger of prejudice is significant because of the potential for the jury to automatically accept an expert witness's testimony. *Daubert*, 509 U.S. at 595; *see also U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.,* 608 F.3d 871, 895 (D.C. Cir. 2010), *cert. denied,* 131 S. Ct. 2443 (2011) ("Rule 403 exclusion based on unfair prejudice is particular important in the case of expert evidence.").

### III. ARGUMENT

#### A. MR. MANHEIM SHOULD BE PRECLUDED FROM TESTIFYING AND/OR OPINING ON EBAY AS AN ANTICIPATORY OR OBVIOUSNESS REFERENCE

##### 1. Mr. Manheim Fails to Establish the Presence of Every Limitation of the Gonzalez Patents in the eBay Reference

To invalidate an issued patent on anticipation grounds, a cited prior art reference must include *every* limitation claimed by the issued patent. *OPTi, Inc. v. VIA Techs., Inc.*, 65 F. Supp. 3d 465, 473-74 (E.D. Tex. 2014) ("A patent claim is anticipated if each and every limitation is found in a single prior art reference." (citing *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 704 (Fed. Cir. 2012))). Here, the asserted claims of the Gonzalez Patents each require the presence of, *inter alia*, "digital labels" and at least one "database" storing such labels. The Court, in this case, has construed "digital labels" to mean "something symbolic of unambiguous qualitative data about an item, its maker, or its owner, in digital form." (Memorandum Opinion and Order at 18 [Dkt. No. 109]). Therefore, it was incumbent upon Mr. Manheim, in his expert capacity, to proffer—through reliable and methodologically sound practices—***clear and convincing evidence*** demonstrating the presence of both the "digital labels" and "database storing digital labels." He did not.

Instead, Mr. Manheim superficially analyzed *the appearance* of a purported archived website image, absent *any* corroborating evidence to establish the authenticity of the image or to support his "analysis." Specifically, Mr. Manheim looked *solely* at various *screenshots* of the eBay website—purported to predate the Gonzalez Patents—and conclusorily states that "digital labels" and a "relational database" were utilized by the early eBay website.[3] Mr. Manheim even went so far as to state, without support, not only *what kind* of database eBay used nearly two

---

[3] Gonzalez also notes that Mr. Manheim states, without support, that eBay "required" sellers to list their items with certain category headers or titles (*see* Manheim Report at 18, ¶¶ 55, 57-59); however, he provides *no evidence* to demonstrate that these headers or titles were actually *necessary* to use the website.

decades ago, but *how* the website itself functioned—all without a scintilla of evidence supporting the same. For instance, despite presenting no evidence of the actual eBay system used, or even mentioning any inspection of the same, Mr. Manheim states matter-of-factly:

> "eBay stored the category, price, region, ending date, and title of each eBay listing in a relational database."

(Manheim Report at 19). As support for this statement, Mr. Manheim cites *only* a screenshot of eBay's "Find Items" user interface. This screenshot, however, simply portrays information that is purported to have been *visible* on the user interface at the relevant time period. The screenshot provides no information as to the systems utilized by eBay in conjunction with the eBay webpages or by eBay in any context whatsoever. Moreover, the cited screenshot was not even taken from an eBay website, but from the third-party website archive.org. At a bare minimum, Mr. Manheim could have cited source code or testimony as to the actual database system used by eBay during the relevant time period. Rather than doing so, Mr. Manheim instead relies entirely on a screenshot from a third-party archiver of the purported state of eBay's web interface.

Amazingly, though, Mr. Manheim's failure to actually inspect or review evidence of eBay's systems did not prevent him from commenting on *how* the system worked. While opining on how eBay met the '665 Patent's limitation of "producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information," Mr. Manheim *claimed* that eBay users would fill out and submit HTML forms, and that that process satisfied the above limitation. He then doubled-down on his unsupported claim with a healthy dose of speculation:

> "These sets of values *may* have been hard-coded into the HTML form, and *may* have been stored in a separate database or file that was accessed in order to generate the HTML for the form."

(Manheim Report at 36, n. 4) (emphasis added).

It is clear that Mr. Manheim's opinions are not based off actual evidence, if for no other reason than it is impossible to determine what technologies are utilized by a website simply by viewing a screenshot of the website in a web browser. Instead, Mr. Manheim *speculates* as to the *background functionality* of the website and concludes that a database, as disclosed by the Gonzalez Patents, existed in the eBay website at the relevant time. Allowing Mr. Manheim to pass off this kind of unsupported conjecture as "expert testimony" is not helpful to anyone (other than New Life), and will only serve as a source of confusion for the jury. Simply put, Mr. Manheim's statements are exactly what Rule 702 and *Daubert* intended to be kept out. Accordingly, the Manheim Report, as it relates to anticipation of the Gonzalez Patents by the eBay reference, should be stricken in its entirety.

### 2. Mr. Manheim Fails to Provide Any Obviousness Analysis Whatsoever With Respect to the eBay Reference

Obviousness is a fact-intensive analysis. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009). Moreover, it is a defendant's burden to prove obviousness by clear and convincing evidence. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 5140809, *1 (E.D. Tex. Sept. 27, 2010) (citing *Hearing Components Inc. v. Shure Inc.*, 600 F.3d 1357, 1373 (Fed. Cir. 2010). These principles evidently were not lost on Mr. Manheim, as he outlined a number of ways how obviousness, or nonobviousness, can be established and recognized that it is New Life's burden to establish obviousness. (Manheim Report at 7-9). Nevertheless, the *full extent* of his obviousness analysis with respect to the eBay reference is limited to a single header of his report: "eBay Anticipated And/Or Rendered Obvious The Asserted Claims." (Manheim Report at 17).

Mr. Manheim's obviousness "assessment" is inconsistent with how the Federal Circuit has instructed the legal community to analyze the obviousness question. Indeed, the Manheim

Report contains no analysis of any secondary considerations or indicia of non-obviousness; there is no discussion as to whether a person having ordinary skill in the art would have been motivated to combine the eBay reference (or any other reference) to achieve the invention disclosed in the Gonzalez Patents. The entirety of Mr. Manheim's obviousness analysis amounts to a single, conclusory statement. This is hardly evidence, much less clear and convincing evidence. Moreover, that single sentence is not helpful to the trier of fact as it is not supported by *any* analysis whatsoever. Accordingly, Mr. Manheim's opinion that eBay renders the Gonzalez Patents obvious should be excluded as it provides absolutely no probative value to the question of validity, is unreliable as it is not supported with any analysis, and is unfairly prejudicial as the jury may be tempted to accept Mr. Manheim's hindsight bias as actual evidence of obviousness.

### B. MR. MANHEIM SHOULD BE PRECLUDED FROM TESTIFYING AND/OR OPINING ON EBAY'S DATABASE OR SOURCE CODE

As previously established, Mr. Manheim's opinions with regard to eBay's database structure and source code are based entirely off of speculation. He does not cite to any exhibit or any other evidence that reflected the technologies utilized by eBay at the relevant time period, nor does he mention undertaking any review of the source code utilized by eBay at the relevant time period. Plainly, Mr. Manheim's failure to support his opinions with any competent evidence or to conduct an actual review of the eBay system and instrumentalities implemented therein should preclude him from opining on either the database or source code of the eBay system at all or putting forth any evidence to the same. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

The reasons for such preclusion are twofold. First, allowing Mr. Manheim to opine on the eBay backend technologies when he did not actually review the underlying technologies is

not helpful to the jury. Indeed, admitting Mr. Manheim's unsupported testimony would effectively elevate his *subjective belief* with regard to how the eBay website functioned at the relevant time period over evidence of how the systems *actually* functioned at that same time period. Said another way, if Mr. Manheim's unsupported opinions are provided to a jury, there is a substantial risk that the jury will take *his* "beliefs" as evidence of how the eBay system *actually* functioned, even though he, in fact, had no actual knowledge of what technologies eBay utilized pre-the Gonzalez Patents.

Mr. Manheim's *ipse dixit* approach to assessing the eBay systems raises a classic concern of Rule 702 and *Daubert*: the jury accepting an expert's testimony simply because the person is an expert. *Daubert*, 509 U.S. at 595. Moreover, his unsupported testimony that the pre-Gonzalez eBay website utilized digital labels for searching and not simply Boolean searching (or the like) would mislead the jury on the issue of how the eBay website functioned since Gonzalez has discovered *actual evidence*—some of which comes directly from eBay itself—demonstrating that eBay did not function as Mr. Manheim claims.[4] Absent preclusion of Mr. Manheim's opinions on eBay's use of databases and its source code, a jury could **erroneously** see Mr. Manheim's opinion and Gonzalez's actual evidence as simply competing theories with regard to functionality of the pre-Gonzalez website. But this is not a competition of equals; it is a competition of fact (Gonzalez's actual evidence) and fiction (Mr. Manheim's speculation). As such, Mr. Manheim's speculation in the form of so-called expert testimony should not be introduced to a jury.

---

[4] *See*, for example, "The Auction Guild," http://www.theauctionguild.com/tagnotes/TN111.htm:

> eBay is looking for help with a new search engine called Smart Search. ***They are currently using Boolean searches which are advanced commands that help refine searches.*** You can exclude certain words or look for the exact words, any of the words or all of the words. For example, you can type a Boolean search command like baseball –autograph to give you items that have the word baseball in them but not the word autograph. Some users have found these Boolean commands difficult to use and to remember.

Second, allowing Mr. Manheim to proffer expert testimony to the jury about eBay's database and source code without providing reliable evidence of an actual review of those aspects of the eBay system unfairly prejudices Gonzalez. As it stands, Mr. Manheim either reviewed those materials and withheld the evidence or he did not review the eBay system at all. If it is the former, New Life should not be permitted to conceal possibly relevant evidence and ambush Gonzalez with information he was incapable of preparing for. If it is the latter, allowing New Life to present evidence of eBay's database structure or source code gives Mr. Manheim an opportunity to rehabilitate his expert report and circumvent the discovery cut-off date for experts. Indeed, today, December 21, 2015, is the last day to complete expert discovery, and, to date, there has been no disclosure of the source code of the eBay system. Plainly, whether by ambush or by mulligan, New Life's presentation of evidence to support Mr. Manheim's unsupported claims unfairly prejudices Gonzalez. For the foregoing reasons, Mr. Manheim should be precluded from presenting expert testimony or evidence of eBay's database or source code.

### C.   MR. MANHEIM'S TESTIMONY AND/OR OPINIONS SHOULD BE STRICKEN BECAUSE HE RELIES ON THE INCORRECT LEVEL OF ORDINARY SKILL

The Court established the level of ordinary skill in this case with the issuance of its Claim Construction Order: "a person with an advanced college degree and some business skills. The person would further possess at least a working knowledge of Internet search concepts, as well as at least some fundamental computer programming skills." (Memorandum and Order at 9). Mr. Manheim, however, felt the need to establish his own level of ordinary skill:

> "I believe the level of skill relevant to the '807 and '665 patents would be an individual with an undergraduate degree in computer science, or an equivalent combination of education and experience. My opinion about the level of 'ordinary skill' is based on my review of the [Gonzalez Patents] and my own familiarity with both the developments that were occurring in the technical field of the [Gonzalez patents] in the July 1, 2000 timeframe, and with the level of education and experience of the practitioners in the field at the time."

(Manheim Report at 13).

It is well-established that patents are interpreted from the perspective of one of ordinary skill in the art. In determining the level of skill, courts look to the following factors: (i) the educational level of the inventors; (ii) the type of problems encountered in the art; (iii) prior art solutions to those problems; (iv) the rapidity with which innovations are made; (v) sophistication of the technology; and (vi) education level of active workers in the field. *See Lodsys, LLC v. Brother Intern. Corp.,* 2:11-cv-0090, 2013 WL 2949959 at *7 (E.D. Tex. June 14, 2013) (citing *Env'tl Designs, Ltd. v. Union Oil Co. of California,* 713 F.2d 693, 696 (Fed. Cir. 1983) and *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.,* 501 F.3d 1254, 1256 (Fed. Cir. 2007)). These same factors are used to assess the level of skill for purposes of determining validity; indeed, the Courts in both cited cases (*Env'tl Designs* and *Daiichi*) were doing just that when they each set forth the six recited factors. Plainly, then, the level of ordinary skill is assessed using the same factors and remains consistent throughout claim construction and validity, yet Mr. Manheim suggests a heightened standard beyond that which was adopted for purposes of claim construction. This, of course, is no surprise, since it is easier to establish obviousness under a higher level of ordinary skill. *E.g., Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,* 688 F.3d 1342, 1366 (Fed. Cir. 2012). The failure on the part of New Life to contest the level of skill at claim construction waives its ability to re-open the issue now (*see, e.g., Seoul Semiconductor v. Nichia,* 596 F. Supp. 2d 1005, 1010 (E.D. Tex. 2009)), and reliance on the part of Mr. Manheim on a heightened level of skill for purposes of opining on validity renders his opinions entirely unreliable and not helpful. Accordingly his testimony, evaluated from an erroneous level of ordinary skill, should be stricken in its entirety.

### D. MR. MANHEIM'S REBUTTAL REPORT SHOULD BE STRICKEN IN ITS ENTIRETY FOR FAILURE TO REBUT DR. GARLICK'S INFRINGEMENT ANALYSIS

A rebuttal expert is limited to opining on those issues raised in the opposing party's opening expert report. *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744, 2015 WL 3509384, *2 (N.D. Cal. June 3, 2015) ("[A] defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)." (citing *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991))). A rebuttal expert report is not an opportunity to rehash other issues. Therefore, a court may exclude a rebuttal expert report that is not in fact "rebuttal testimony." *See id.* at *4-5 (striking a defendant's purported rebuttal expert report after determining that the report did not put forth rebuttal opinions).

In this case, Mr. Manheim failed to offer *any* rebuttal to Dr. Garlick's infringement expert report in his rebuttal expert report ("the Manheim Rebuttal Report"). Indeed, the *entirety* of Mr. Manheim's substantive argument section is non-responsive to the issue of infringement. Instead, Mr. Manheim punts the issue of infringement in favor of rehashing his flawed invalidity arguments. *See* Manheim Rebuttal Report at 10. A representative argument from the Manheim Rebuttal Report is as follows:

> "In the same way, as explained in my previous report, the eBay prior art includes a web server, and associated computer systems, databases and sources code, as well as relational database server."

(Manheim Rebuttal Report at 10).

Aside from the fact that, as established earlier, Mr. Manheim's invalidity arguments are unreliable, based off insufficient evidence, and devoid of any methodological analysis, the argument is completely non-responsive to the issue of infringement. Given that the Manheim Rebuttal Report consists only of invalidity arguments, it is clear that the rebuttal report would only serve as a source of confusion for the jury on the issue of infringement. As such, the Manheim Rebuttal Report should be excluded in its entirety.

### E. MR. MANHEIM'S OPINIONS SPECIFICALLY DIRECTED AT MR. GONZALEZ SHOULD BE STRICKEN BECAUSE THEY ARE IRRELEVANT

An expert report is not the place for personal attacks. Unfortunately, this concept was lost on Mr. Manheim, as he takes several unnecessary shots at Mr. Gonzalez personally in his report. Indeed, Mr. Manheim makes several statements that can, at best, be characterized as attacks on credibility, and at worst, crass name-calling. For instance, Mr. Manheim suggests that Mr. Gonzalez deliberately made factually incorrect statements about the functionality of meta-tags to the U.S. Patent and Trademark Office during prosecution of the Gonzalez Patents. (Manheim Report at 75, ¶ 303). Another example is Mr. Manheim's suggestion that Mr. Gonzalez was too technologically inept to innovate in the computer space. (Manheim Report at 85, ¶¶ 324-325). These types of unfounded allegations have nothing to do with the validity of the Gonzalez Patents, and Mr. Manheim has hardly been established as an expert on credibility or aptitude; therefore, his criticisms of Mr. Gonzalez fall well outside his purview for this report and the statements should be stricken as irrelevant.

### F. MR. MANHEIM FAILS TO PROVIDE A RELIABLE ANTICIPATION ANALYSIS OF META-TAGS AND DOES NOT CONDUCT AN OBVIOUSNESS ANALYSIS; THEREFORE, HIS OPINIONS ADDRESSING THOSE INVALIDITY GROUNDS SHOULD BE STRICKEN

For many of the reasons outlined in previous sections, Mr. Manheim's opinions with regard to the Meta-Tags and their anticipatory or obviousness impact on the Gonzalez Patents should be stricken. Specifically, these opinions should be stricken because they are unsupported by evidence and are merely conclusory statements passed off as "facts." For example, Mr. Manheim states that "Meta-tags are also gathered and 'domiciled' on the computers of a search-engine such as Altavista, Excite, and Infoseek/Go.com, when the search engine indexes/crawls the webpage." (Manheim Report at 52, ¶ 191). He cites nothing for this statement. He simply opines that meta-tags could be domiciled and searched by a search engine and then concludes, "Thus, limitation [665-1h] is anticipated." This opinion is

unsupported by evidence and is not helpful to a trier of fact. Accordingly, his testimony as to anticipation with respect to meta-tags should be stricken.

The reliability of Mr. Manheim's opinions with respect to obviousness is worse. Like his "assessment" of the eBay reference, Mr. Manheim provides no actual obviousness analysis of meta-tags. Indeed, he does not apply any of the obviousness considerations outlined in the introductory section of his report, nor does he discuss how a person having ordinary skill in the art would be motivated to use meta-tags in the way disclosed by the Gonzalez Patents. Instead, he (again) opts for hindsight bias and conclusory statements. For example, on more than one occasion Mr. Manheim states, "Thus the public knowledge and use of search engines that indexed the HTML meta-tags in websites that were generated with a web-authoring tool such as Dreamweaver or FrontPage renders obvious limitations . . . ." (*See* Manheim Report at 55-56, ¶¶ 204, 207, 209, 216). To the extent this constitutes Mr. Manheim's obviousness analysis, it is wholly unsupported by any evidence and is simply a conclusory statement, which is not helpful to the jury. The bottom line is that Mr. Manheim again fails to provide a proper obviousness analysis of a purported prior art reference, and his opinions as to such prior art and obviousness should be stricken entirely.

### G. MR. MANHEIM'S OPINION IS IRRELEVANT TO SECTION 101 SUBJECT MATTER AND SHOULD BE STRICKEN

The opinions of Mr. Manheim concerning the alleged non-patentable subject matter embraced by the asserted claims should be stricken in their entirety. It is axiomatic that expert opinion is not properly directed to questions of law. *See, e.g., Bianco v. Globus Medical,* 30 F. Supp. 3d 565, 571 (E.D. Tex. 2014); *MediaTek v. Freescale Semi.,* 11-cv-5341, 2014 WL 971765 at *1 (N.D. Ca. March 5, 2014). Validity under section 101 is a threshold question of law. *Thales Visionix v. U.S.,* 122 Fed. Cl. 245, 250 (Fed. Cl. 2015). As such, the opinions of Mr. Manheim as to invalidity under section 101 should be stricken.

## IV. CONCLUSION

For the foregoing reasons, Gonzalez respectfully requests that Mr. Manheim be precluded from testifying at trial and/or proffering any expert opinions that the Gonzalez Patents are not valid by anticipation or obviousness in light of the eBay reference, that the entirety of his expert report be stricken for relying on an erroneously level of ordinary skill in the art, among the other reasons outlined above, and that the entirety of his rebuttal expert report be completely stricken for non-responsiveness to the issue of infringement.

December 21, 2015

Respectfully submitted,

  /s/ M. Scott Fuller
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@lockelord.com
Paul D. Lein
   Texas Bar No. 24070133
   plein@lockelord.com
Darrian L. Campbell
   Texas Bar No. 24087250
   dcampbell@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800
**ATTORNEYS FOR PLAINTIFF
EMMANUEL C. GONZALEZ**

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2015, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ M. Scott Fuller

## CERTIFICATE OF CONFERENCE

      The undersigned hereby certifies that a conference was conducted via electronic mail with counsel for Defendant New Life concerning the subject matter of this Motion to Strike the Expert Report of Daniel Manheim. Defendant New Life opposes the relief requested herein.

                                                      /s/ M. Scott Fuller