IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EMMANUEL C. GONZALEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:14-cv-0906 |
| vs. | § | Consolidated Lead Case |
| | § | |
| INFOSTREAM GROUP, INC., | § | JURY DEMAND |
| | § | |
| Defendant. | § | |
| _____ | | _____ |
| NEW LIFE VENTURES, INC. | § | Case No. 2:14-cv-0907 |
| _____ | | _____ |
| TAGGED, INC. | § | Case No. 2:14-cv-0993 |
| _____ | | _____ |

OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE
THE EXPERT REPORT AND OPINIONS OF DANIEL MANHEIM

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   MR. MANHEIM'S EXPERT REPORT AND OPINIONS REGARDING EBAY
      SHOULD NOT BE EXCLUDED OR STRICKEN ............................................ 2

      A.    Mr. Manheim's Opinions Are Properly Based On His Personal Experience
            And Knowledge Of The EBay Website .................................................... 2

      B.    Mr. Manheim Should Also Be Allowed To Testify About The Inferences
            A Person Of Ordinary Skill Would Draw From The EBay Web Pages
            Identified By Screenshots ....................................................................... 5

III.  MR. MANHEIM'S REBUTTAL REPORT AND OPINIONS REGARDING
      EBAY SHOULD NOT BE EXCLUDED OR STRICKEN ................................ 8

IV.   MR. MANHEIM'S OPINIONS SHOULD NOT BE EXCLUDED OR
      STRICKEN BASED ON HIS OPINION REGARDING THE LEVEL OF
      ORDINARY SKILL ......................................................................................... 6

V.    MR. MANHEIM'S OPINIONS REGARDING MR. GONZALEZ'S FALSE
      STATEMENTS TO THE PATENT OFFICE SHOULD NOT BE EXCLUDED
      OR STRICKEN ............................................................................................... 8

VI.   MR. MANHEIM'S INVALIDITY OPINIONS REGARDING META-TAGS
      SHOULD NOT BE EXCLUDED OR STRICKEN .......................................... 10

VII.  MR. MANHEIM'S INVALIDITY OPINIONS REGARDING SECTION 101
      SHOULD NOT BE EXCLUDED OR STRICKEN .......................................... 10

VIII. CONCLUSION ............................................................................................... 11

## I.    INTRODUCTION

Gonzalez's motion to strike the expert reports and opinions of Defendant's expert should be denied because its premises are wrong.

Gonzalez asserts that Mr. Manheim's explanation of how the prior art eBay website invalidates the claims is "not based off actual evidence" because Mr. Manheim formed his opinions solely based on "screenshots of the eBay website," and "had no actual knowledge" about that website.[1] In fact, Mr. Manheim has direct personal experience with the prior art eBay website, and his invalidity opinions are properly based on his own personal knowledge and experience, not solely on "screenshots" of web pages.  Moreover, even if that were not true, it would be appropriate for Mr. Manheim to opine about what a person of ordinary skill would understand from the content of the eBay web pages at issue—exactly as he does in his expert report.   In fact, Gonzalez's own expert reports contradict its arguments, because Gonzalez's experts themselves offer opinions about what a person of ordinary skill would understand from the eBay web pages.

Gonzalez's motion to strike amounts to an argument that the Manheim report's *factual* statements are incorrect.  For example, Gonzalez argues that it has "discovered actual evidence" that "eBay did not function as Mr. Manheim claims."[2]  A factual dispute between the parties is not a reason to exclude Mr. Manheim's opinions under *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Rather, Gonzalez is entitled to argue its version of the facts at trial, to cross-examine Mr. Manheim, and to present its evidence (if admissible).

---

[1] Dkt. 117 at 10, 12.
[2] Dkt. 117 at 12.

## II.   MR. MANHEIM'S EXPERT REPORT AND OPINIONS REGARDING EBAY SHOULD NOT BE EXCLUDED OR STRICKEN

### A.   Mr. Manheim's Opinions Are Properly Based On His Personal Experience And Knowledge Of The EBay Website

An expert is entitled to testify based on personal experience and knowledge. *Kumho Tire Co. v. Carmichael*, 526 US 137, 152 (1999).  Gonzalez's argument that it disputes some of the facts described in Mr. Manheim's expert report is not a proper basis for excluding Mr. Manheim's testimony under *Daubert*.  "[I]t is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003).  To the contrary, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means for Gonzalez to attack the factual assertions that it disputes. *Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015), *citing Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see also Bunker v. Ford Motor Co.*, 2013 WL 4505798 (D. Nev. 2013) ("the Daubert factors may have little application to expert testimony based on personal knowledge or experience").

Gonzalez's argument that Mr. Manheim's opinions are based on "unsupported speculation" is simply wrong.  Mr. Manheim has personal experience with the prior art eBay website, and personal knowledge regarding eBay's use of a relational database for its 'back end.' Ex. 1 (Manheim Declaration) at ¶¶ 3-6.  Mr. Manheim's Invalidity Report (attached as Exhibit 2) properly states that his invalidity opinions are based on specific facts about the prior art eBay website, including that it used a relational database, *e.g.*:

- "a relational database such as the one used by eBay supported searching via the use of SQL (Structured Query Language) which allows searching by database fields" (Ex. 2 at ¶ 93)

2

- "Relational databases, such as the one used by eBay, store data using various encoded data types such as for example, varchar, text, int, float, and date." (Ex. 2 at ¶ 137)

- "eBay stored the category, price, region, ending date, and title of each eBay listing in a relational database." (Ex. 2 at ¶ 60)

Gonzalez's repeated assertion that these sorts of factual assertions are "speculation" is simply not true, because they properly reflect Dr. Manheim's personal knowledge and experience.  Ex. 1 at ¶¶ 3-6.

Gonzalez's argument that these factual assertions are "unreliable," "misleading," "unsupported conjecture," or mere "subjective belief" is equally wrong.  For example, it is unlikely that Gonzalez is going to actually dispute at trial the fact that eBay used a relational database, because the public record incontrovertibly shows that it did:  eBay's Annual Report for 1998 states that "[t]he Company's system consists of Sun database servers running Oracle relational database management systems," and that users of the eBay website "can search specific categories or the entire database of auction listings."  Ex. 3 (eBay Annual Report for 1998) at 12, 8.

Finally, Gonzalez's own expert reports demonstrate that it is well aware that experts testify based on their own personal experience, and that factual assertions can be made in an expert report without a specific citation.  For example, Gonzalez's report regarding the eBay prior art (attached as Exhibit 4) contains multiple factual assertions without any citation, many of which are directed to on the same issues that are the subject of its motion to strike, *e.g.*:

- "There is no requirement that a listing for an auction be stored in a database.  In fact, the entire listing, once created, could be stored as a web page." (Ex. 4 at ¶ 117.)

- "[D]isplaying a table such as that shown in Ex. eBay-5 on a screen in a web browser

3

can be performed without the use of a relational database. For example, the words, entry boxes, formatting and all other aspects of the information displayed on a web page can be explicitly typed into the web page itself by the web page creator…" (Ex. 4 at ¶ 85.)

- "[T]he value "1951" may be stored as an integer (int), a float (float), or a variable length character string (varchar)." (Ex. 4 at ¶ 119.)

- "A relational database is a collection of tables. … The columns in a table are referred to as "attributes," and the rows in a table are referred to as 'records'" (Ex. 4 at ¶ 88.)

Gonzalez's expert reports also contain many other factual assertions made without any citation, *e.g.*:

- "[L]ibraries contain books on a broad range of topics." (Ex. 4 at ¶ 245.)

- "[T]he data in a library card concerns only a book." (Ex. 4 at ¶ 264.)

- "It is customary to include patent applications, continuations-in-part and any future paten reissuances that would cover the accused technology to avoid having to renegotiate the license each time a new patent is issued." (Ex. 5 at ¶ 31.)

- "The royalty rate may be applied towards a number of royalty bases, some of the more typical being the number of units sold or sales revenue for products or services using the technology being licensed." (Ex. 5 at ¶ 30.)

These examples show that Gonzalez's experts rely on factual assertions made without any citation.  It is disingenuous for Gonzalez to suggest that this is unacceptable when done by Mr. Manheim, but acceptable when done by its experts.

In sum, it is proper for Mr. Manheim to testify to facts about the prior art eBay website, such as the fact that it used a relational database to store and search auction listings.  That

testimony is directly relevant to whether the prior art invalidates the asserted claims, which require, for example, "a subscriber database" or a "Host Website database."  If Gonzalez wishes to dispute that eBay used a relational database, or other facts about eBay, it can do so through cross-examination and presentation of contrary evidence.  *See Summit 6*, 802 F.3d at 1296; *Micro Chem.*, 317 F.3d at 1391–92.

**B.**     **Mr. Manheim Should Be Allowed To Testify About The Inferences A Person Of Ordinary Skill Would Draw From The EBay Web Pages Identified By Screenshots**

Additionally, Mr. Manheim should be allowed to explain his opinions about the inferences that a person of ordinary skill in the art would draw from the webpages of the eBay website.  In multiple places in his report, Mr. Manheim uses screenshots to show HMTL pages that the prior art eBay website presented to users through their browsers.  Mr. Manheim then explains what a person of ordinary skill in the art would understand from the web pages shown in those screenshots.

For example, Mr. Manheim explains discusses the web page partially reproduced below:



Mr. Manheim explains that this webpage illustrates how eBay "allowed buyers to search for listings based on category, price, region, ending-date, and title." (Ex. 2 at ¶ 67.)  He goes on to explain that a "person of ordinary skill in the art person of ordinary skill in the art would have understood that the data about each auction was stored in a database order to enable subsequent searches." (Ex. 2 at ¶ 82, *see also* ¶¶ 94-95, 63-64.)

This sort of opinion about what a person of ordinary skill in the art would understand from the prior art is exactly the sort of expert opinion that is routinely provided in patent cases. In fact, Gonzalez's expert, Dr. Engles, provides his own opposing opinions on exactly the same issue without providing any citation to any supporting evidence: "The search capabilities provided by eBay could have been provided by means other than a database such as by structured files and directories… a person of ordinary skill in the art could not conclude that eBay utilized a database." (Ex. 4 at ¶ 104.)  Dr. Engels also provides a number of other opinions about what a person of ordinary skill would understand, conclude, or infer—all without providing any citation to any supporting evidence.[3]

In sum, Mr. Manheim should be permitted to explain his opinions about the inferences that a person of ordinary skill in the art would draw from the webpages of the eBay website, just as Gonzalez proposes that its experts be allowed to do.

## III.   MR. MANHEIM'S OPINIONS SHOULD NOT BE EXCLUDED OR STRICKEN BASED ON HIS OPINION REGARDING THE LEVEL OF ORDINARY SKILL

Gonzalez asks the Court to exclude all of Mr. Manheim's opinions on the grounds that he applied the wrong level of ordinary skill in the art.  Dkt. 117 at 13-14.  Gonzalez argues that

---

[3] *E.g.* Ex. 4 at ¶ 149 ("[G]iven the constantly changing values that could possibly go into such drop down menus (see, eg., Ex. eBay-7) a person having ordinary skill in the art would use and store the values directly to minimize maintenance and errors that would occur as the possible values were changed or updated."); ¶ 230 ("Library cards did not provide a classification system.")

because the Court applied a particular level of ordinary skill in its Claim Construction Order, that level of ordinary skill is binding on the parties for trial, and that because Mr. Manheim applied a somewhat different definition of the level of ordinary skill, his opinions are "entirely unreliable." Gonzalez's argument should be rejected for two reasons.

First, the difference between the definition of ordinary skill that Mr. Manheim provided in his Invalidity Report and the definition applied in the Claim Construction Order does not make any of Mr. Manheim's opinions unreliable.  The definition of ordinary skill in Claim Construction Order is a person "with an advanced college degree and some business experience… as well as at least some fundamental computer programming skills."  The definition in the Manheim Invalidity Report is "an undergraduate degree in computer science, or an equivalent combination of education and experience." Mr. Manheim's opinions would not change regardless of which definition of ordinary skill is applied.  (Ex. 1 at ¶ 8.)  Moreover, Gonzalez does not even try to explain why the difference between the two definitions would make a difference to any actual issue in the case—Gonzalez merely asserts the generality that "it is easier to establish obviousness under a higher level of ordinary skill."

Second, the fact that Defendants did not dispute the level of ordinary skill proposed by Gonzalez for claim construction does not mean that Defendants are now barred from offering evidence about the level of ordinary skill.  The opinion cited by Gonzalez, *Seoul Semiconductor Co. Ltd. v. Nichia Corp.*, is a claim construction ruling in which the court observed that a party "waived argument" on the level of ordinary skill for claim construction purposes, because, when asked about it at the claim construction hearing, the party stated "I don't really think it matters too much."  596 F. Supp. 2d 1005, 1111 (E.D.Tex. 2009).  That case does not support Gonzalez's argument here.

Mr. Manheim should be allowed to offer his opinion about the proper level of skill in the art, as well as the other opinions stated in his reports.

## IV.    MR. MANHEIM'S REBUTTAL REPORT AND OPINIONS REGARDING EBAY SHOULD NOT BE EXCLUDED OR STRICKEN

Gonzalez argues that Mr. Manheim's rebuttal report should be stricken because it is "not responsive to the issue of infringement" and is thus not "rebuttal testimony."  Dkt. 117 at 15. This argument should be rejected.  Mr. Manheim's rebuttal report explains that Dr. Garlick's infringement theory supports a finding of invalidity, because it shows that the eBay prior art meets the claim limitations in the same way that Dr. Garlick identifies as showing infringement. Ex. 6 (Manheim Rebuttal Report) at ¶ 40 ("the eBay prior art contains the same features and functionality that Dr. Garlick identifies as showing infringement"), *see generally* ¶¶ 39-68.  Mr. Manheim's opinions are relevant because if there is "no difference" between the prior art and what is alleged to infringe a claim, then the prior art anticipates that claim.  *See* TQP Development, LLC v. 1-800-Flowers.com, Inc., Case No. 2:11-CV-248-JRG (E.D.Tex., August 17, 2015) (*citing Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier")).  Furthermore, Gonzalez is wrong to argue that this is not rebuttal testimony.  It was not possible for Mr. Manheim to review Dr. Garlick's infringement opinions and compare them to the prior art until after Gonzalez served Dr. Garlick's infringement report.

## V.    MR. MANHEIM'S OPINIONS REGARDING MR. GONZALEZ'S FALSE STATEMENTS TO THE PATENT OFFICE SHOULD NOT BE EXCLUDED OR STRICKEN

Gonzalez asks the Court to exclude "personal attacks" allegedly contained in Mr. Manheim's report.  Dkt. 117 at 16.  This request should be denied.  Mr. Manheim explains that Mr. Gonzalez made factually incorrect statements to the Patent Office about prior art meta-tags

in order to obtain allowance of his patents.  Regardless of whether Gonzalez's statements to the Patent Office about the prior art were *intentionally* incorrect, the fact that they were incorrect is relevant to the validity of the Gonzalez patents, and particularly to whether the Patent Office erred in deciding to allow those patents.  The Supreme Court has explained that "if the PTO did not have all material facts before it, its considered judgment may lose significant force," and that in fact, "a jury instruction on the effect of new evidence can, and when requested, most often should be given." *Microsoft Corp. v. i4i Ltd P'ship*, 131 S. Ct. 2238, 2251 (2011).

Furthermore, contrary to Gonzalez's argument, Mr. Manheim's opinion is not an "unnecessary shot" at "Mr. Gonzalez personally," nor is it "crass name-calling."  In fact, Mr. Manheim explained that Mr. Gonzalez's incorrect statements to the Patent Office may have inadvertently resulted from his lack of technical knowledge, rather than an intent to deceive:

> Mr. Gonzalez either deliberately mislead the Patent Office, or else did not understand that there were many types of meta-tag in HTML other than "keywords."[4]

The fact that Mr. Gonzalez did not actually understand what an HTML meta-tag was (and had no database experience, and did not even know what "SQL" was) is not a personal attack, it is evidence that Gonzalez, perhaps inadvertently, sought and obtained claims that read onto the admitted prior art and are thus invalid.

Regardless, the factual incorrectness of the statements Gonzalez made to the Patent Office is relevant to invalidity.  It would be fundamentally unfair to allow Mr. Gonzalez to testify about what he believes he invented without allowing Defendants to respond with evidence showing that what Mr. Gonzalez says is factually wrong.

Finally, contrary to Gonzalez's argument, Mr. Manheim's opinion that Mr. Gonzalez's statements to the Patent Office are factually incorrect is not "unfounded."  Mr. Manheim's report

---

[4] Ex. 2 (Manheim Invalidity Report) at ¶ 303; see generally ¶¶ 302-309.

explains the basis of this opinion with numerous examples in his report.  (Ex. 1 at ¶¶ 302-309, pp. 75-79.)

## VI.     MR. MANHEIM'S INVALIDITY OPINIONS REGARDING META-TAGS SHOULD NOT BE EXCLUDED OR STRICKEN

Gonzalez argues that Mr. Manheim's invalidity opinions regarding HTML meta-tags should be stricken because they are "unsupported by evidence."  Dkt. 117 at 16-17.  Gonzalez is wrong here for the same type of reasons that it is wrong about eBay.  First, the Manheim report does contain extensive citations to evidence.  It cites extensively to the HMTL 4.01 Specification, which is a the worldwide standard for the HMTL language that was published on December 24, 1999, and to web pages from multiple search engines that existed prior to Gonzalez's invention. (Ex. 1 at ¶¶ 154-218,  pp.41-60).  Second, Gonzalez's argument amounts to nothing more than a description of factual disputes between the parties.  But it "is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."  *Micro Chem.,* 317 F.3d 1391-92.  Gonzalez served a 91-page rebuttal report regarding validity, and it should argue its version of the facts at trial by cross-examining Mr. Manheim, and presenting its evidence (if admissible)—not by asking the Court to summarily exclude Mr. Manheim's opinions.  Finally, contrary to Gonzalez's argument, the Manheim report contains specific explanations in support of his obviousness opinions, *e.g.* ¶¶ 195-196, 205-207.

## VII.    MR. MANHEIM'S INVALIDITY OPINIONS REGARDING SECTION 101 SHOULD NOT BE EXCLUDED OR STRICKEN

Gonzalez argues that Mr. Manheim's opinions relating to 35 U.S.C. § 101 should be stricken because validity "under section 101 is a threshold question of law."  Defendants have requested summary judgment of invalidity, as required by the Court's scheduling order, but that request has not been resolved.  Thus, Gonzalez's argument should be rejected.

## VIII.  CONCLUSION

For the reasons stated herein, Gonzalez's motion should be denied.

Dated: January 8, 2016                    Respectfully Submitted,

By:    */s/ Nicholas A. Brown*
       NICHOLAS A. BROWN
       (CA SBN 128210, admitted EDTX)
       brown@gtlaw.com
       STEPHEN M. ULLMER
       (CA SBN 277537, admitted EDTX)
       ullmers@gtlaw.com
       GREENBERG TRAURIG, LLP
       4 Embarcadero Center, Suite 3000
       San Francisco, CA 94111-5983
       Telephone: 415.655.1300
       Facsimile: 415.520.5609

       **ATTORNEYS FOR DEFENDANTS
       TAGGED, INC. AND NEW LIFE
       VENTURES, INC**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the date listed below, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

Dated: January 8, 2016                              /s/ Nicholas A. Brown

                                                    Nicholas A. Brown