IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| EMMANUEL C. GONZALEZ, § <br> § <br> Plaintiff, § <br> § <br> v. § Case No. 2:14-cv-906-JRG-RSP <br> § <br> INFOSTREAM GROUP, INC., § <br> § <br> Defendant. § | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant New Life Ventures, Inc.'s (NLV) Motion for Summary Judgment of Invalidity. (Dkt. No. 142.) NLV contends that the asserted patents, U.S. Patent No. 7,873,665 (the '665 patent) and U.S. Patent No. 7,558,807 (the '807 patent), are invalid because they are not patent eligible under 35 U.S.C. § 101. (Dkt. No. 142 at 1.) The Court, having considered the arguments, **RECOMMENDS** that NLV's Motion for Summary Judgment (Dkt. No. 142) be **DENIED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper when there is no genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts. Disputes over facts that are not

relevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and identify the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party does not have the ultimate burden of persuasion, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## ELIGIBILITY UNDER 35 U.S.C. § 101

Section 101 of the Patent Act defines what is eligible for patent protection. It says: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court must look at what the claims cover. *See Ultramercial*, 772 F.3d at 714 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[T]he important inquiry for a § 101 analysis is to look to the claim."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental … practice long prevalent in our system ….'") (quoting *Alice*, 134 S. Ct. at 2356).

For example, in *Bilski*, the Supreme Court rejected as a patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit rejected as patent-ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit rejected as a patent-ineligible a claim that recited components that "relate[d] to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369.

A court applies the second step of *Mayo* only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*,

134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of processes that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1299 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes "'[p]ost-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

# ANALYSIS

### A. The Challenged Patents

NLV contends that the '665 patent and the '807 patent "are invalid because they claim the abstract idea of using labels to facilitate searches." (Dkt. No. 142 at 9.) This constitutes an abstract idea, NLV states, because "Gonzalez told the Patent Office that his invention was to label websites using a digital form of the labels that were already well-known on physical items." (Dkt. No. 142 at 11.) Furthermore, NLV asserts that the specification shows that "using labels to facilitate searches" is an abstract idea. NLV points to the summary of the invention and contends that it "shows that the invention described in the Gonzalez patents is the abstract idea of using [] labels as a way to organize websites by category to make them easier to find, because it shows that it is the same idea that is used in library-card catalogs: using labels to organize books by category so they are easier to find." (Dkt. No. 142 at 11.)

Claim 1 of the '665 patent recites:

> **1.** A method for multi-parameter digital labelling of Internet Websites, comprising:
> gathering of unambiguous, multi-parameter qualitative data concerning a single or a plurality of at least one of an Internet website, an Internet posting, their substantive contents, and their owner or creator;
> sourcing, from the owner or creator of said website or Internet posting, each said item of qualitative data referring to said website, said internet posting, or its substantive contents or its owner or creator;
> producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information;
> wherein producing of digital labels further comprises encoding of the qualitative data in any digital form;
> domiciling of these multi-parameter digital labels on at least one of the same computer, the same computer network, and on several computers linked to each other;
> manipulation of the said multi-parameter digital labels comprising generation of a list of at least one of websites

>     and Internet postings that match parameters stipulated
>     by an entity conducting a search and represented in the
>     digital labels according to at least one of the presence of,
>     the absence of, the numerical or other value contained in,
>     the numerical or other value not contained in, any one,
>     all, and any configuration of the labels that have reference
>     to one or more websites or Internet postings; and
>   making available the effective use of these multi-parameter
>     digital labels and the means for their manipulation, to the
>     general public through the Internet.

('665 patent, col. 23 ll. 27–12.)

In plainer English, claim 1 of the '665 patent describes a method for making "digital labels." The two primary steps of the method are: (1) gathering "unambiguous, multi-parameter qualitative data" on websites or Internet postings and their owners from the owners; and (2) producing "digital labels" for the websites and postings where each "digital label" represents "a particular item of qualitative information" about the website, posting, or owner. The claim then states that the "plurality of digital labels" are "produc[ed]" by "encoding" and are "domicil[ed]" on a computer or network. The "domiciled" "labels" can be "manipulated," by generating a list of websites or postings that have labels that represent the "parameters stipulated by an entity conducting a search" or that do not have labels that are excluded by the parameters. ('665 patent, col. 23 ll. 27–12.)

Claim 1 of the '807 patent recites:

> **1.** A host website apparatus for listing subscribers comprising:
> a computer system,
> said computer system includes a digital label database for
>   providing to a listing subscriber digital labels representing
>   different specific qualities and a subscriber database
>   for storing a listing of subscribers' digital labels;
> said computer system being configured to respond to a
>   subscriber's request for listing and guiding the sub-
>   scriber via the Host Website display to enter information
>   pertaining to the subscriber and converting the information

6

>     to digital labels by accessing said digital label database
>     and storing the subscriber's digital labels in said
>     subscriber database; and
>   said computer system further configured to enable users to
>     search said subscriber database for subscriber digital
>     labels identifying subscriber qualities.

('807 patent, col. 19, l. 19–col. 20, l. 8.)[1]

In plainer English, claim 1 of the '807 patent describes a website. First, the website must have at least a computer system with a database for providing subscribers with "digital labels" that "represent[] different specific qualities" and a "database for storing a list" of "subscribers' digital labels." Second, the computer system must be configured to (1) "respond to a subscriber's request for listing"; (2) "guid[e] the subscriber" to "enter information" about to the subscriber; (3) "convert[] the information [entered by the subscriber] to digital labels by accessing [the] digital label database"; and (4) "store[] the subscribers' digital labels in [the] [] database." The computer system must be further configured to allow users to "search [the] subscriber database for subscriber digital labels [which] identify[] subscriber qualities." ('807 patent, col. 19, l. 19–col. 20, l. 8.)

**B.** *Mayo* **Step One**

The Court finds that claim 1 of the '665 patent not directed to an "abstract idea" such as gathering and organizing data into a searchable format. Claim 1 of '665 patent recites steps for "gathering" one type of data and "producing" a "label." "Gathering" data may describe an abstract idea, but "producing" a "label" based on that data does not describe an abstract idea. The Court has construed "label" to mean "something symbolic of unambiguous qualitative data about an item, its maker, or its owner." (Dkt. No. 109 at 18.) Processing gathered data to "produce"

---

[1] The Court finds that claim 1 of the '807 patent is representative of claim 3, the only other independent claim in that patent.

7

"something symbolic" does not describe an abstract idea because that process is a specific and concrete implementation of data storage. For example, a claim directed at using a computer to issue "revolving credit" may be directed at an abstract idea, but a claim directed at a "credit card" is not directed at an abstract idea. A "credit card" works as a specific and concrete implementation of the abstract idea of "revolving credit." *See DDR Holdings*, 773 F.3d at 1257 ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink.") Similarly, using "labels" serves a concrete and specific way of conducting data storage and search.

The Court also finds that claim 1 of the '807 patent does not describe an "abstract idea." Claim 1 of the '807 patent recites a computer system configured to use "digital labels." (Dkt. No. 109 at 18 ("'digital label' means 'something symbolic of unambiguous qualitative data about an item, its maker, or its owner, in digital form.'").) The system obtains "digital labels" by "responding" to a subscriber request and "guiding" the subscriber to provide the information that is used to create the "digital labels."

The "responding" limitation may describe the somewhat abstract idea of reacting to information from a source. The "guiding" limitation, however, describes a more specific and concrete way of processing information. Many ways of gathering information exist besides obtaining it by "guiding" a subscriber. Finally, as stated above, organizing data using "labels" describes a specific and concrete way of implementing data storage. *Compare Accenture*, 728 F.3d at 1338 ("The abstract idea at the heart of system claim 1 . . . is generating tasks [based on] rules . . . to be completed upon occurrence of an event.") (citation omitted); *with* '807 patent

("converting the information to digital labels [construed as 'something symbolic of unambiguous qualitative data about an item, its maker, or its owner, in digital form.']").

**C.** *Mayo* **Step Two**

The Court finds that claim 1 of the '665 patent and claim 1 of the '807 patent are not directed at abstract ideas and are patent-eligible under § 101. The Court thus, does not need to reach *Mayo* step-two. *See Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, No. 2015-1415, 2016 WL 362415, at *6 (Fed. Cir. Jan. 20, 2016) ("[C]ourts must determine if the claims at issue are directed to a patent-ineligible concept. If not, the inquiry ends, as the claims are patent-eligible.") (citation omitted).

However, even if the claims of the '665 patent and the '807 patent are directed at abstract ideas, the Court finds that the claims read as whole disclose an "inventive concept." *Mortgage Grader*, 2016 WL 362415, at *8 ("[T]he next step is to look for an ''inventive concept'— i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'") (citation omitted). For example, claim 1 of the '807 patent describes a computer system that allows for data to be more easily searched (*see* Dkt. No. 109 at 13 (citing '665 patent col. 1, l. 31–col. 2, l. 24)) and the specification implies that the invention "improve[s] the functioning of the computer [system] itself" *Alice*, 134 S. Ct. 2359.[2] Thus, even though the claims recite generic physical limitations such as "computer system," "database," and "Website," *see Accenture*, 728 F.3d at 1338, in combination with "labels" these components improve the computer system so that it can address the Internet-centric problem of "surfers" being unable find information through word-match searches, *see DDR Holdings*, 773 F.3d at 1257.

---

[2] The asserted patents share substantially the same specification. (Dkt. No. 109 at 3 n.2.)

## CONCLUSION

The Court finds that the claims of the '665 patent and the '807 patent not directed toward abstract ideas and therefore do not violate "the longstanding rule that '[a]n idea of itself is not patentable.'" *Alice*, 134 S. Ct. at 2355 (quoting *Benson*, 409 U.S. at 67). The Court also finds that, even if the claims are is directed to abstract ideas, the additional elements of the claims "transform the nature of the claim" into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1298). The claims use any potentially abstract idea "in a [manner] designed to solve a technological problem in 'conventional industry practice.'" *Alice*, 134 S. Ct. at 2358 (quoting *Diehr*, 450 U.S. at 177–78). The Court **RECOMMENDS** that NLV's Motion for Summary Judgment (Dkt. No. 142) be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within **FOURTEEN DAYS** shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 6th day of February, 2016.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE