UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EMMANUEL C. GONZALEZ, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:14-cv-906-JRG |
| INFOSTREAM GROUP, INC., | § § § § | Consolidated Lead Case |
| *Defendant*. | § § § | |
| NEW LIFE VENTURES, INC. | § | Case No. 2:14-cv-907-JRG |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant New Life Ventures, Inc.'s ("NLV") Motion for Summary Judgment of Invalidity ("Mot.", Dkt. No. 142). In its motion, NLV argues that the asserted claims of U.S. Patent No. 7,873,665 (the "'665 Patent") and U.S. Patent No. 7,558,807 (the "'807 Patent") (collectively, the "Patents-in-Suit") are invalid because they are ineligible for patent protection under 35 U.S.C. § 101. Having reviewed the motions and the Patents-in-Suit, the Court is persuaded that none of the asserted claims are directed to patentable subject matter. Accordingly, NLV's motion is **GRANTED**.

### I. BACKGROUND

On September 23, 2014, Plaintiff Emmannuel C. Gonzalez ("Plaintiff") filed a complaint for patent infringement against multiple defendants and initially asserted five patents, including the '665 Patent and the '807 Patent. ("Complaint," Dkt. No. 1.) The Court held a *Markman* hearing on August 18, 2015, and issued a Claim Construction Order (Dkt. No. 109). Plaintiff currently asserts claims 1, 42, and 53 of the '655 Patent and claims 1, 2, and 3 of the '807 Patent.

Asserted independent claim 1 of the '665 Patent recites:

1. A method for multi-parameter digital labelling of Internet Websites, comprising:
> gathering of unambiguous, multi-parameter qualitative data concerning single or a plurality of at least one of an Internet website, an Internet posting, their substantive contents, and their owner or creator;
> sourcing, from the owner or creator of said website or Internet posting, each said item of qualitative data referring to said website, said internet posting, or its substantive contents or its owner or creator;
> producing a plurality of digital labels for each said website or internet posting, wherein each digital label uniquely refers to and represents a particular item of qualitative information;
> wherein producing of digital labels further comprises encoding of the qualitative data in any digital form;
> domiciling of these multi-parameter digital labels on at least one of the same computer, the same computer network, and on several computers linked to each other;
> manipulation of the said multi-parameter digital labels comprising generation of a list of at least one of websites and Internet postings that match parameters stipulated by an entity conducting a search and represented in the digital labels according to at least one of the presence of, the absence of, the numerical or other value contained in, the numerical or other value not contained in, any one, all, and any configuration of the labels that have reference to one or more websites or Internet postings; and
> making available the effective use of these multi-parameter digital labels and the means for their manipulation, to the general public through the Internet.

('665 Patent, col. 23, ll. 28–58.) The other asserted claims of the '665 Patent are dependent claims.

Asserted independent claim 1 of the '807 Patent recites:

1. A host website apparatus for listing subscribers comprising:
> a computer system,
> said computer system includes a digital label database for providing to a listing subscriber digital labels representing different specific qualities and a subscriber database for storing a listing of subscribers' digital labels;
> said computer system being configured to respond to a subscriber's request for listing and guiding the subscriber via the Host Website display to enter information pertaining to the subscriber and

2

> converting the information to digital labels by accessing said digital label database and storing the subscriber's digital labels in said subscriber database; and
>
> said computer system further configured to enable users to search said subscriber database for subscriber digital labels identifying subscriber qualities.

('807 Patent, col. 19, l. 19–col. 20, l. 8.) The Court finds that claim 1 of the '807 Patent is representative of claim 3, the only other independent claim in that patent.

## II. LEGAL STANDARD

### A. Summary Judgment Under Rule 56

Federal Rule of Civil Procedure 56(c) authorizes a Court to grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A party moving for summary judgment must satisfy its initial burden by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

Patent eligibility under § 101 is an issue of law, but the legal conclusion may contain underlying factual issues. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Here, there are no material factual disputes that would prevent the Court from deciding NLV's motion pursuant to Rule 56.

### B. Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act defines scope of patent eligible subject matter:

> Whoever invents or discovers any new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court articulated a two-step test for "distinguishing

patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714–15 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'").

For example, in *Bilski*, the Supreme Court rejected as patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit found patent ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit held that a claim that contained steps "relat[ing] to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual Ventures*, 792 F.3d at 1369.

A court applies the second step, per *Mayo*, only if it finds as part of the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at

4

2355. Such a second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of a process that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1300 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however,

5

remains patent-ineligible if it describes only "'post-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

**III.  DISCUSSION**

In order to prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step and then also fail the "inventive concept" step of the *Alice* test. In this case, NLV contends that the Patents-in-Suit fail both steps. First, NLV argues that the asserted claims are directed to the abstract idea of "using labels to facilitate searches." (Mot. at 9.) Second, NLV asserts that the asserted claims include no inventive concept "beyond the idea of using digital labels for websites." (*Id.* at 1.)

**A.  *Alice* Step One: The Ineligible Concept Step**

Here, the Court finds that the asserted claims are directed to the abstract idea of gathering and labeling information to facilitate efficient retrieval of the labeled information. Claim 1 of the '665 Patent describes a method for making "digital labels," while Claim 1 of the '807 Patent describes a website configured to retrieve information based upon a "digital label database." ('665 Patent, col. 23, l. 38; '807 Patent, col. 19, l. 22.) As the Court recently found in *eDekka*, a case in which the asserted patent ("eDekka patent") was similarly directed to the abstract idea of storing and labeling information, "the claimed idea represents routine tasks that could be performed by a human." *eDekka v. 3balls.com*, 2015 WL 5579840, at *4 (E.D. Tex. Sept. 21, 2015).

**B.  *Alice* Step Two: The Inventive Concept Step**

Because the asserted claims are directed toward an abstract idea, the Court must next determine whether an inventive concept exists that is sufficient to transform the claims into patent-eligible subject matter. Such transformation requires more than simply stating the abstract

idea "while adding the words 'apply it.'" *Mayo*, 132 S. Ct. at 1294. Here, the Court finds that such an inventive concept does not exist to transform the asserted claims of the Patents-in-Suit into patent-eligible subject matter.

Like the *eDekka* patent, which included terms that, at best, vaguely alluded to computer-based activity, the claim limitations of both the '665 Patent and the '807 Patent are insufficient to demonstrate that the Patents-in-Suit amount to more than patents on abstract ideas. *See Alice*, 134 S. Ct. at 2355. The purported inventive step, as argued by Plaintiff, is applying the well-known concept of labeling information to websites. *Alice* holds that implementing an abstract idea (such as generic labeling) on a computer does not make that idea patentable. *Id.* at 2352. Similarly, "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

In describing the invention to the Patent Office, Plaintiff conceded that "this kind of labeling is common in commerce in physical form," but "it has not heretofore been used or proposed in digital form for websites." (Mot., Ex. 9) The claims themselves offer nothing more than taking the well-known concept of labeling and applying it to the internet. The Court finds that this application does support finding an inventive concept to be present in the asserted patents.

Though Plaintiff contends that "several important claim elements" elevate the contested claims beyond the realm of an abstract idea, the Supreme Court explained that an abstract idea cannot be transformed into a patentable invention by "appending conventional steps, specified at a high level of generality." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1300). Whether analyzed individually or collectively, the "important claim elements" cited by Plaintiff amount to nothing more than inherently abstract ideas, conventional steps, or both. Accordingly, the Court

7

concludes that the Patents-in-Suit fall outside the scope of patentable subject matter defined by § 101.

## IV. CONCLUSION

For the reasons set forth above, the Court holds that the claims of the '665 Patent and the '807 Patent are not directed toward eligible subject matter under 35 U.S.C. § 101.

Accordingly, the Court **GRANTS** NLV's Motion for Summary Judgment of Invalidity (Dkt. No. 142).

**So ORDERED and SIGNED this 25th day of April, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE